**Cedrick VAUGHN, Petitioner–Appellee,**

v.

**Frank GUNTER, Executive Director of the Department of Corrections, and Bill Boggs, Superintendent, Rifle Correctional Center, Respondents–Appellants.**

**No. 91SA39.**

Supreme Court of Colorado, En Banc.

Dec. 3, 1991.

---

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Paul Farley, Deputy Atty. Gen., John August Lizza, First Asst. Atty. Gen., Paul S. Sanzo, Asst. Atty. Gen., Human Resources Section, Denver, for respondents-appellants.

No appearance for petitioner-appellee.

Justice MULLARKEY delivered the Opinion of the Court.

The Department of Corrections (Department) brings this appeal from the trial court's order granting a petition for writ of habeas corpus filed by an inmate, Cedrick Vaughn. We have jurisdiction of this appeal pursuant to section 13–4–102(1)(e), 6A C.R.S. (1987). The trial court held that, although Vaughn was not entitled to absolute release, he was entitled to be released on parole. We agree.

## I.

Vaughn was convicted and sentenced in three different cases in the Denver District Court. The first offense occurred on September 28, 1984. Vaughn was convicted of possession of a controlled substance, a class 3 felony, in violation of section 18–18–105, 8B C.R.S. (1986), and was sentenced to a term of nine years plus a period of parole. The second offense occurred on July 10, 1985. Vaughn was convicted of theft, a class 4 felony, in violation of section 18–4–401, 8B C.R.S. (1986), and he was sentenced to a term of eight years plus a period of parole. The final offense occurred on December 2 and 3, 1985 and resulted in Vaughn's conviction of attempted motor vehicle theft, a class 5 felony, in violation of section 18–2–101, 8B C.R.S. (1986). Vaughn was sentenced to a term of eight years plus a period of parole. The three sentences were to be served concurrently.

Because Vaughn's initial conviction and sentence concerned a crime committed before July 1, 1985 and his second two convictions and sentences concerned crimes committed on or after July 1, 1985, Vaughn was sentenced under two different schemes which have different approaches to parole. *Compare* § 17–22.5–303(4), 8A C.R.S. (1986) *with* § 17–22.5–303(6), 8A C.R.S. (Cum.Supp.1991). *See generally Thiret v. Kautzky,* 792 P.2d 801, 803–805 (Colo. 1990). Under section 17–22.5–303(4), which applies to Vaughn's controlled substance offense, he must be released on his parole eligibility date or placed on parole for up to three years. *See Thiret,* 792 P.2d at 804 n. 6 and accompanying text. Vaughn's second and third sentences, however, are subject to section 17–22.5–303(6). Under that statute, good time and earned time credits accrued by an inmate serve to determine his parole eligibility date but do not mandate his release on parole. *Id.* at 805. *See also Renneke v. Kautzky,* 782 P.2d 343, 346 (Colo.1989) (Post–1985 "statutory

scheme contemplates that an inmate who becomes eligible for parole consideration may, at the discretion of the Department and the parole board, be denied parole status and continued in the custody of the Department until a subsequent parole eligibility date, so long as the total period of confinement does not exceed the actual sentence imposed.").

In this case, then, Vaughn's nine-year sentence carries with it mandatory parole while his two eight-year sentences are subject to parole at the discretion of the parole board. Vaughn filed his petition for writ of habeas corpus after he had been incarcerated for approximately five years and argued that his nine-year sentence was the "governing" sentence because it was the longest sentence of potential incarceration. Since that sentence required mandatory parole and he had accumulated sufficient good time and earned time credits to qualify for parole, he contended that he was entitled to be released. The trial court agreed that the nine-year sentence was the "governing" sentence and ordered the parole board to set the terms and conditions for his release.

## II.

■■■ For purposes of parole, when multiple sentences are involved, the legislature requires the Department of Corrections to construe all sentences being served by an inmate as one continuous sentence. § 17–22.5–101, 8A C.R.S. (1986). In the case of concurrent sentences, we have said that "concurrent sentences obviously commence at the same time and in functional effect result in one term of imprisonment represented by the longest of the concurrent sentences imposed." *Schubert v. People*, 698 P.2d 788, 795 (Colo.1985). The longest of the concurrent sentences also is described as the "governing" sentence.

■■■ In *Price v. Mills*, 728 P.2d 715 (Colo. 1986), we considered which parole eligibility system should apply when an inmate was serving sentences for offenses committed both before and after July 1, 1979. Pre–1979 offenses were subject to lengthy, indeterminate sentences with discretionary parole while post–1979 offenses were subject to shorter, determinate sentences with mandatory parole. To decide which was the governing sentence, we looked to the sentence with the maximum potential period for incarceration or the sentence having the longer incarceration effects. We then applied the parole system for that sentence to all concurrent sentences imposed on the inmate. *Id.* at 718–719. Since the longest sentences were imposed for pre–1979 offenses, the effect of *Price* was to apply the discretionary parole feature of the pre–1979 law to inmates' composite sentences for convictions of crimes occurring both before and after July 1, 1979.

In the *Thiret* case, the inmate was serving two concurrent sentences resulting from the same criminal episode in August 1983. He was sentenced to ten years of imprisonment plus one year of parole for attempted murder and four years of imprisonment plus one year of parole for sexual assault on a child. Based on a statutory exception, we determined that parole was discretionary on the sexual assault conviction but mandatory with respect to the attempted murder conviction. The Department argued for a composite or hybrid sentence which would take features from both sentences, namely the ten-year sentence imposed on the attempted murder charge and the discretionary parole applicable to the sexual assault charge. It made the argument despite the fact that the sentence to which discretionary parole applied had been completely served. We rejected the Department's position and held that *Price* was dispositive. *Thiret*, 792 P.2d at 807–808. We said:

> Under the logic of *Price*, the "governing" sentence is the longest sentence for which Thiret was sentenced, and the relevant parole provisions of that sentence apply to the entire "composite" sentence.

*Id.* at 808 (footnote omitted). We found that there was "no basis to conclude that a person who has been concurrently sentenced for a sex offense loses his right to mandatory parole on a longer, otherwise 'governing' sentence." *Id.*

In the case now before us, the Department argues that the legislature intended discretionary parole to apply when a defendant is serving concurrent sentences for crimes which occurred before and after July 1, 1985. It relies on section 17–22.5–303(6), 8A C.R.S. (Cum.Supp.1991), which makes parole discretionary for offenses committed on or after July 1, 1985.[1] Emphasizing the words underscored in footnote 1, the Department contends that Vaughn's right to mandatory parole was "nullified" by his two subsequent convictions of crimes subject to discretionary parole. The Department's argument would be correct if Vaughn had received consecutive sentences. The cited section, however, does not address the concurrent sentencing issue now before us. Moreover, the Department's argument ignores section 17–22.5–101 mandating the Department to construe all sentences imposed on an inmate as one continuous sentence, its own administrative practice which developed the "governing" sentence concept, and the case law interpreting section 17–22.5–101 as authorizing administrative use of the "governing" sentence. *Price,* 728 P.2d at 718. Other than its "nullification" theory, the Department offers no substitute for the "governing" sentence as a method of time computation.

We reject the Department's contention that application of the "governing" sentence rule will lead to absurd results. The Department mistakenly focuses only on the time served before parole and it overlooks the fact that Vaughn would have been eligible for parole at an earlier date under his eight year discretionary parole sentences. Further, Vaughn was not released absolutely. He was ordered to be placed on parole and, during his period of parole, he remains subject to his nine-year "governing" sentence. If he does not successfully complete parole, his parole may be revoked and he may be reincarcerated to serve up to five years not to exceed the balance of his nine-year sentence.[2] § 17–22.5–303(4), 8A C.R.S. (1986); *Anderson v. Kautzky,* 786 P.2d 1082, 1085 (Colo.1990). *See also Bynum v. Kautzky,* 784 P.2d 735 (Colo. 1989). The nine-year sentence plainly exposes Vaughn to a longer period of incarceration than do the two eight-year sentences. We decline to judicially shorten that sentence by accepting the Department's argument that the eight-year, discretionary parole sentences are controlling.[3]

Thus, because Vaughn was eligible for mandatory parole under the longest of the three concurrent sentences imposed on him, we affirm the trial court's order granting his petition for a writ of habeas corpus and releasing him on parole.

---

1. That provision reads as follows:
    (6) *Any* person sentenced for a class 2, class 3, class 4, or class 5 or class 6 felony committed on or after July 1, 1985, shall be *eligible* for parole after he has served the sentence imposed less any time authorized for good time earned pursuant to section 17–22.5–301 and for earned time pursuant to section 17–22.5–302. Upon an application for parole, the state board of parole, working in conjunction with the department and using the guidelines established pursuant to section 17–22.5–303.5, shall determine *whether or not to grant parole* and, if granted, the length of the period of parole, which may be for a period of up to five years. If an application for parole is refused by the state board of parole, the state board shall reconsider within one year thereafter the granting of parole to such person and shall continue the reconsideration each year thereafter until such person is granted parole or until he is discharged pursuant to law.
    (emphasis added).

2. According to a petition filed by Vaughn in this court on November 19, 1991, *Vaughn v. Gunter,* No. 91SA415, Vaughn presently is incarcerated in the Denver County jail for an alleged parole violation and parole revocation proceedings are pending before the parole board.

3. We note that the Department's position in this litigation appears to be inconsistent with its administrative time computation in Vaughn's case. Attached to Vaughn's petition is a document entitled "Colorado Department of Corrections Official Time Computation Report" dated June 14, 1990. That document shows Vaughn's nine-year sentence as the "governing" minimum sentence and Vaughn's time credits are deducted from that sentence.