Vincent J. SPOTO, Petitioner/Appellant,

v.

COLORADO STATE DEPARTMENT OF CORRECTIONS, Aristedes Zavaras, Executive Director, Robert Furlong, Superintendent, Respondents/Appellees.

No. 93SA361.

Supreme Court of Colorado,
En Banc.

Oct. 11, 1994.

Vincent J. Spoto, pro se.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Paul Farley, Deputy Atty. Gen., John August Lizza, First Asst. Atty. Gen., Diane Marie Michaud, Asst. Atty. Gen., Human Resources Section, Denver, for respondents-appellees.

Justice SCOTT delivered the Opinion of the Court.

In this direct appeal we are to decide whether the district court erred in discharging Vincent J. Spoto's petition for writ of habeas corpus. Because Spoto is serving consecutive sentences and thus is not eligible for immediate release, we hold the district court did not err and affirm its ruling.

I

There is no dispute among the parties as to the relevant facts. On February 11, 1991, Vincent J. Spoto pleaded guilty to second degree murder,[1] a class 2 felony.[2] Given credit for time served since December 17, 1984, he commenced a seventeen-year sentence of confinement and was placed in the custody of the Colorado Department of Corrections (DOC). In September, 1988, Spoto attempted an escape but was apprehended. Subsequently, he was convicted of attempted escape,[3] and sentenced to a three-year term of imprisonment. The three-year escape sentence was to run consecutively to the original seventeen-year sentence imposed pursuant to Spoto's second-degree murder conviction, thereby resulting in an aggregate or composite sentence of twenty years.

In August, 1993, after granting Spoto a hearing to determine his eligibility for discretionary parole pursuant to his attempted escape conviction, the state parole board denied his application for parole. The parole board deferred further consideration until August, 1994.

On September 14, 1993, Spoto filed his petition for writ of habeas corpus with the Lincoln County District Court. As of that date, he had served a total of eight years, eight months and twenty-seven days.[4] Spoto claimed in his petition that he was entitled to mandatory parole on October 6, 1993. According to the DOC, however, Spoto's mandatory parole date is April 16, 1995.

On September 23, 1993, the district court issued a writ of habeas corpus ordering the DOC to show cause why Spoto should not be released from custody.[5] On October 4, 1993, the district court conducted a hearing pursuant to its order to show cause.

At the October hearing, the parties agreed that there were no factual disputes, only questions of law to be resolved. Spoto argued that he was entitled to parole. In support of his claim, Spoto reasoned that once a defendant has been twice convicted and is serving multiple sentences—regardless of whether the sentences imposed are concurrent or consecutive—the parole board should use only the longest or governing sentence to determine a defendant's parole eligibility. Positing that his mandatory parole date should thus be calculated based solely upon his original and governing seventeen-year sentence, Spoto argued that the three-year sentence should be ignored or

---

1. See § 18–3–103, 8B C.R.S. (1986).

2. Petitioner was originally convicted in El Paso County District Court on charges including first-degree murder for events occurring in November, 1985. His conviction was overturned on appeal, *People v. Spoto*, 772 P.2d 631 (Colo.App. 1988), which judgment of the court of appeals we affirmed, *People v. Spoto*, 795 P.2d 1314 (Colo.1990). The facts regarding his conviction are set forth in those opinions and need not be repeated here.

3. See § 18–8–208, 8B C.R.S. (1986).

4. This sum assumes 252 days of presentence confinement credit.

5. The named respondents were the Department of Corrections, Aristedes Zavaras, Executive Director of the DOC, and Robert Furlong, Superintendent of the Limon Correctional Facility.

subsumed within the original or governing sentence.

Spoto contended that under section 17–22.5–303(4), 8A C.R.S. (1986), which established mandatory parole for class 2 felonies, he was entitled to immediate parole. That statute provides, in part: "As to any person sentenced for a class 2 ... felony *committed on or after July 1, 1984, but before July 1, 1985,* the [DOC] *shall ... release an offender on his parole eligibility date,* pursuant to the determination made by the state board of parole...." (emphasis added). Spoto argued at his habeas hearing that because his offense, a class 2 felony, was committed during the time period specified in the mandatory parole statute, a parole date of October 6, 1993 was statutorily mandated.[6]

The DOC challenged Spoto's theory on the ground that effect should be given not only to the mandatory parole provision set out in section 17–22.5–303(4), but also to the discretionary parole provision in section 17–22.5–303(6), 8A C.R.S. (1993 Supp.), a provision that applied to Spoto's three-year sentence of confinement imposed for the attempted escape. Subsection (6), in relevant part, provides:

> [a]ny person sentenced for a class 2 ... felony *committed on or after July 1, 1985, shall be eligible for parole after such person has served the sentence imposed....* Upon an application for parole, the state board of parole, ... using the [parole] guidelines ... shall determine whether or not to grant parole and, if granted, the length of the period of parole....

(emphasis added). The DOC asserted that the "governing sentence" theory applied only to concurrent sentences and not, as here, to consecutive terms of incarceration. The DOC took the position that subsections (4) and (6) under section 17–22.5–303 were equally applicable. Thus, the DOC concluded, while Spoto *would* have been eligible for

mandatory parole under the original seventeen-year sentence had he not been convicted of the 1988 attempted escape, the fact of his second conviction and sentence effectively annulled his mandatory parole eligibility. Continuing this argument, the DOC contended that Spoto was therefore required to serve an additional term of confinement based upon the three-year sentence imposed for his attempted escape conviction. Hence, the DOC argued that because the parole board had denied Spoto discretionary parole for the three-year term, he was not yet entitled to immediate release, and as such, his habeas petition should be denied.

The district court agreed with the DOC and dismissed Spoto's petition, ruling that:

> because of the *consecutive* sentence arrangement, ... the escape conviction does nullify the mandatory parole provisions as it relates to the murder conviction.... [T]o construe the statutes in any other manner would not give effect to the discretionary parole provisions and the discretion granted to the [parole board] for convictions ... committed after July 1, 1985.

(emphasis added). Following the dismissal, Spoto filed a motion for reconsideration which was denied.

Spoto appeals the district court's ruling on several grounds. Spoto contends that the district court erred, first, in failing to conduct a full evidentiary proceeding at the habeas corpus hearing, next, by not ruling that the mandatory parole provision contained in section 17–22.5–303(4) controls the determination as to his parole and finally, as a consequence, in discharging his petition.

## II

### A

 Spoto argues that the district court erred in failing to conduct an evidentiary hearing.[7] We disagree. Spoto's argument is

---

6. Applying only this provision, Spoto would be entitled to mandatory parole after having served 50% of his original seventeen-year sentence.

7. The district court could have dismissed Spoto's petition for writ of habeas corpus on the grounds that it was premature. Spoto filed his petition on September 14, 1993, and his hearing was held

on October 4, 1993; however, Spoto claimed an October 6, 1993 mandatory parole date. Spoto's petition for writ of habeas corpus was therefore facially insufficient inasmuch as no issue as to the validity of his confinement existed either at the time he filed his petition or on the date of his hearing. *See Thorson v. Colorado Dept. of Correc-*

unpersuasive for two reasons. First, we point out that the Habeas Corpus Act, 13–45–101 to –110, 6A C.R.S. (1987 & 1991 Supp.), "contemplates a less structured and more abbreviated hearing procedure than that utilized in other civil proceedings." *Cardiel v. Brittian*, 833 P.2d 748, 752 (Colo. 1992). Under the Habeas Corpus Act, the court is only required to "proceed in a summary way to settle the *facts* by hearing the testimony and arguments . . . of the prisoner and the person who holds him in custody and shall dispose of the prisoner as the case may require." *Id.* (citing § 13–45–103(1), 6A C.R.S. (1987)) (emphasis added). As the parties agreed before the district court, there were no facts in dispute. Pursuant to section 13–45–103(1), the district court heard the arguments presented by Spoto and the DOC. In using the telephone as the transmission mechanism, the district court merely exercised its discretion as to the *manner* by which it heard the parties' legal theories. It was wholly reasonable for the district court to conduct the hearing by telephone, especially given the absence of any factual disagreement between the parties.

Second, at the hearing, Spoto was given a full opportunity to be heard and to present evidence, if necessary, or alternatively, to object to the format of the habeas hearing. At the time of the hearing, Spoto did not object to the nature of the hearing conducted by telephone or ask to present witnesses. Because he failed to object, he cannot now complain as to the form of the hearing. This is particularly so in light of the fact that Spoto makes no offer of proof as to what argument or evidence was excluded nor does he indicate the particular argument or evidence he was precluded from offering and would have otherwise presented had he attended the hearing in person. Thus, the

habeas hearing was conducted so as to comport with the Act's procedural requirements.

## B

On the parole issue before us, Spoto's argument also fails as a matter of law. He asserts that his parole date should be computed based upon what is known as the "governing sentence" theory. The governing sentence analysis that Spoto espouses, however, applies solely to multiple sentences that are *concurrent.*[8] *Thiret v. Kautzky*, 792 P.2d 801 (Colo.1990). Where multiple concurrent sentences with conflicting parole provisions have been imposed, it is necessary to apply the governing sentence principle. In such contexts, for purposes of determining the individual's parole date, one of the sentences must of course govern.[9]

In the present case, Spoto's second criminal offense, attempted escape, carried a term of confinement running *consecutively* to his antecedent sentence. Where consecutive sentences have been imposed, unlike in the case of concurrent sentences, there is no need for one particular sentence to dominate. *Vaughn v. Gunter*, 820 P.2d 659, 661–62 (Colo.1991).

In *Vaughn*, we were confronted with the question as to whether the legislature intended discretionary parole to apply when a defendant is serving concurrent sentences for crimes occurring both before and after the discretionary parole statute became effective. The DOC had argued the discretionary parole provision embodied in section 17–22.5–303(6), 8A C.R.S. (1991 Supp.) required that the defendant's statutory right to mandatory parole be annulled by his two subsequent convictions of crimes that were controlled by the discretionary parole provision. *Vaughn*,

---

tions, 801 P.2d 540 (Colo.1990) (defendant's habeas corpus petition asserting that he was entitled to discharge on his mandatory parole date was premature where his *petition was filed prior to asserted release date*, and as such, petition was properly denied); *Reed v. People*, 745 P.2d 235, 238 (Colo.1987) (judicial inquiry in habeas corpus review is whether petitioner's confinement *at time of hearing* was valid). Hence because he did not make a *prima facie* showing that his confinement was invalid, Spoto was not entitled to a hearing on his petition for habeas corpus.

**8.** A concurrent sentence is one that runs simultaneously, in whole or in part, with another sentence. It is distinct from a consecutive sentence which begins to run only after the completion of a prior sentence. *Brinklow v. Riveland*, 773 P.2d 517, 520 (Colo.1989).

**9.** *See Thiret v. Kautzky*, 792 P.2d 801 (Colo.1990), for a more complete discussion as to the governing sentence analysis.

820 P.2d at 662. We disagreed with the DOC in that case on the ground that the discretionary parole statute "does not address the concurrent sentencing issue," and concluded that in the case of *concurrent* sentences, the governing sentence analysis enunciated in *Thiret* was dispositive of the issue. *Id.*

We also acknowledged in *Vaughn* that the DOC argument, that the defendant's right to mandatory parole should be "nullified" by his two subsequent discretionary parole convictions, was appropriate in cases where the defendant has received *consecutive* sentences:

> Emphasizing the words [contained in section 17–22.5–303(6) ] the [DOC] contends that Vaughn's right to mandatory parole was "nullified" by his two subsequent convictions of crimes subject to discretionary parole. *The [DOC's] argument would be correct if Vaughn had received consecutive sentences.* The cited section, however, does not address the concurrent sentencing issue now before us.

*Vaughn,* 820 P.2d at 662 (emphasis added). This approach, one that effectively "nullifies" a defendant's mandatory parole, gives effect to both the mandatory and discretionary parole provisions, *see People v. James,* 178 Colo. 401, 497 P.2d 1256 (1972) (where the supreme court can construe two acts of the legislature to harmonize with one another, it must do so), and preserves unfettered the role of the parole board to make discretionary parole decisions. We note that this principle has been applied previously.

In *People v. Baker,* 703 P.2d 631 (Colo. App.1985), for example, the court of appeals observed that in the case of consecutively-imposed sentences, section 17–20–111, 8 C.R.S. (1978) (now section 17–22.5–101, 8A C.R.S. (1986)), assisted in the harmonization of the seemingly inconsistent mandatory and discretionary parole statutes. That provision requires that where separate sentences are imposed "they shall be construed as one continuous sentence." *Id.* Applying this provision, the court of appeals juxtaposed the defendant's consecutive sentences and held that "the consecutive sentences would be considered one sentence, and thus [the] de-

fendant would [not] be eligible for release on parole until completion of all incarceration." *Baker,* 703 P.2d at 632; *see also McKnight v. Riveland,* 728 P.2d 1297 (Colo.App.1986) (holding that separate consecutive sentences should be construed as one continuous sentence for purposes of determining parole eligibility).

We conclude that this is the proper approach for determining a defendant's parole date where consecutive sentences have been imposed and where the mandatory and discretionary parole statutes both apply. It has the effect of harmonizing subsections (4) and (6) in section 17–22.5–303, gives effect to section 17–22.5–101, and is consistent with prior decisional law. We also conclude that the district court properly construed Spoto's two consecutive sentences as one continuous sentence that included the seventeen-year term and the three-year term. We therefore agree with the district court's review of our statutory scheme relating to parole.

## C

In light of our conclusion that the governing sentence analysis does not apply to circumstances involving consecutive sentences and, in effect, Spoto's failure to claim any infirmity in the parole board's rejection of his application for discretionary parole relating to his three-year sentence, he is not currently being unlawfully detained. "A petitioner whose release is subject to the discretion of the parole board is not entitled to immediate release from confinement" and is not being unlawfully detained. *Christensen v. People,* 869 P.2d 1256, 1259 (Colo.1994) (quoting *Rather v. Colorado State Bd. of Parole,* 856 P.2d 860, 862–63 (Colo.1993)). Because Spoto was not entitled to immediate release, his petition for habeas relief was properly denied. We therefore affirm the district court's discharge of Spoto's petition for writ of habeas corpus.

## III

Accordingly, we hold that the district court did not err. Spoto was afforded an adequate hearing as required by the Habeas Corpus Act. Furthermore, because separate consec-

utive sentences are to be construed as one continuous sentence for purposes of determining a defendant's parole eligibility, Spoto's original seventeen-year and three-year consecutive sentences must both be considered in determining his parole eligibility. Finally, because Spoto is not currently eligible for immediate release from the DOC, his petition for writ of habeas corpus was properly denied. We find no error in the ruling of the district court, and its order discharging Spoto's petition is affirmed.