COLORADO COURT OF APPEALS
 2016 COA 07

 
 

 Court of Appeals No. 15CA0083
Chaffee County District Court No. 14CV30
Honorable Charles M. Barton, Judge

 Raymond Lee Fetzer,
 Plaintiff-Appellant,
 v.
 Executive Director of the Colorado Department of Corrections and Warden of the Buena Vista Correctional Facility,
 Defendants-Appellees.

 JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS
 Division I
Opinion by JUDGE TAUBMAN
J. Jones and Harris, JJ., concur
 Announced January 14, 2016

 Raymond Lee Fetzer, Pro Se
 Cynthia H. Coffman, Attorney General, Nicole S. Gellar, Senior Assistant Attorney General, Denver, Colorado, for Defendants-Appellees
  
 ¶1         This case calls on us to consider the application of section 17-22.5-101, C.R.S. 2015, in circumstances not previously addressed by our appellate courts. We evaluate for the first time how section 17-22.5-101 applies to concurrent sentences with different effective dates in determining an inmate’s parole eligibility date (PED).
 ¶2         Plaintiff, Raymond Lee Fetzer, an inmate in the custody of the Department of Corrections, appeals the trial court’s dismissal of his petition for writ of mandamus for failure to state a claim for which relief could be granted.[1] We reverse the trial court’s judgment granting a motion to dismiss filed by the defendants, the executive director for the Department of Corrections and the warden for the Buena Vista Correctional Facility (collectively DOC). We remand the case with directions that the writ of mandamus be granted and that DOC be ordered to correctly calculate Fetzer’s PED. 
 I. Background
 ¶3         Between August 1988 and March 2000, Fetzer was convicted of seven crimes. In August 1988, he was convicted of three offenses — aggravated robbery, first degree burglary, and robbery of the elderly — and the court sentenced him to concurrent twenty-year sentences for each crime.[2] A minor at the time, Fetzer was detained at the Lookout Mountain School until his custody could be transferred to DOC. Before that transfer, Fetzer escaped and was at large for ten months and twenty-four days.
 ¶4         In November 1989, the police arrested Fetzer and returned him to the custody of DOC. In 1990, Fetzer was convicted of his fourth offense, possession of a weapon by a previous offender, and the court sentenced him to serve eight years concurrently with his previous sentences. In 1991, Fetzer was convicted of his fifth offense, and the court sentenced Fetzer to an eighteen-month consecutive sentence for first degree introduction of contraband. The parole board released Fetzer on parole in October 1998; however, in 1999, his parole was revoked, he was returned to prison, and he was later convicted of his sixth and seventh offenses. In March 2000, the court sentenced Fetzer to twenty-two- and thirty-year concurrent sentences for aggravated robbery and menacing. These sentences were to run concurrently with one another and concurrently with Fetzer’s prior sentences.
 ¶5         In 2014, the supreme court in Nowak v. Suthers, 2014 CO 14, 320 P.3d 340, considered whether section 17-22.5-101 requires DOC to construe an inmate’s sentences as one continuous sentence in determining his PED when (1) the second sentence was not imposed until after the PED for the first sentence had passed and (2) when doing so would result in the inmate becoming parole eligible before serving at least fifty percent of the second sentence. Section 17-22.5-101 provides: “For the purposes of this article, when any inmate has been committed under several convictions with separate sentences, [DOC] shall construe all sentences as one continuous sentence.”
 ¶6         The Nowak court held that for the purpose of computing an inmate’s PED, section 17-22.5-101 requires DOC to construe all of an inmate’s sentences as one continuous sentence. Id. at ¶4, 320 P.3d at 342.
 ¶7         Relying on Nowak, Fetzer requested that DOC review his PED. In August 2014, Mary Carlson, supervisor of time and release operations for DOC, reviewed his record and determined that Fetzer’s PED was not affected by Nowak because that decision applied only to consecutive sentences. Using the “governing sentence” method developed by DOC, Carlson determined that Fetzer would be eligible for parole on June 16, 2022. She based the PED on Fetzer’s conviction for aggravated robbery on March 14, 2000. DOC used that date for two purposes: (1) to determine his “governing sentence,” because his thirty-year sentence was the longest of his concurrent sentences; and (2) to determine the “effective date” of his concurrent sentences.
 ¶8         Subsequently, Fetzer filed a petition for mandamus relief in the trial court, asserting that he was entitled to a PED calculation under the one continuous sentence approach with a sentence effective date of August 12, 1988. On November 6, 2014, DOC filed a motion to dismiss pursuant to C.R.C.P. 12(b)(5) and attached an affidavit by Carlson. On November 18, 2014, Fetzer deposited an answer to DOC’s motion in the prison mail system, which apparently did not reach the trial court. On December 12, 2014, the trial court granted the dismissal. Afterward, Fetzer filed, and the trial court accepted, his motion to review his response; however, the trial court determined the dismissal was proper.
 II. One Continuous Sentence
 ¶9         Fetzer contends the trial court erred when it dismissed his petition for writ of mandamus. He also contends DOC failed to construe his several, separate sentences as one continuous sentence as required by section 17-22.5-101 and, therefore, his petition for writ of mandamus should be granted. We agree.
 A. Standard of Review
 ¶10         If matters outside a complaint are attached to a Rule 12(b)(5) motion and the court does not exclude them, the motion is treated as one for summary judgment and disposed of pursuant to C.R.C.P. 56. C.R.C.P. 12(b).[3] DOC attached Carlson’s affidavit to its motion to dismiss, and the trial court gave no indication that it excluded the affidavit. Accordingly, we construe DOC’s motion to dismiss as a motion for summary judgment.
 ¶11         We review de novo a grant of a motion for summary judgment. A-1 Auto Repair & Detail, Inc. v. Bilunas-Hardy, 93 P.3d 598, 600 (Colo. App. 2004). Summary judgment is proper when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Id.
 ¶12         DOC contends we should review for an abuse of discretion because Fetzer’s answer brief should be construed as a motion for reconsideration pursuant to C.R.C.P. 59. See In re Marriage of Jones, 668 P.2d 980, 981 (Colo. App. 1983). A trial court abuses its discretion where its decision is manifestly arbitrary, unreasonable, or unfair. People v. Hoskins, 2014 CO 70, ¶17, 333 P.3d 828, 834. It also abuses its discretion if its decision is based on an erroneous understanding or application of the law. People v. Casias, 2012 COA 117, ¶17, 312 P.2d 208, 212. To the extent we construe Fetzer’s answer brief as a motion for reconsideration, we conclude the trial court abused its discretion because it misapplied section 17-22.5-101 for the reasons stated below.[4]
 B. Principles of Statutory Interpretation
 ¶13         Statutory interpretation is a question of law that we review de novo. Bryant v. Cmty. Choice Credit Union, 160 P.3d 266, 274 (Colo. App. 2007). Under the basic principles of statutory interpretation, we first determine whether the statutory language has a plain and unambiguous meaning. Fischbach v. Holzberlein, 215 P.3d 407, 409 (Colo. App. 2009). “The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.” Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997). We read the statutory scheme as a whole to give “consistent, harmonious, and sensible effect to all parts of the statute.” Salazar v. Indus. Claim Appeals Office, 10 P.3d 666, 667 (Colo. App. 2000). We will not adopt a statutory interpretation that leads to an illogical or absurd result or is at odds with the legislative scheme. Bryant, 160 P.3d at 274.
 C. Applicable Law
 ¶14         Mandamus relief is available only to compel the performance of a nondiscretionary ministerial duty. Verrier v. Colo. Dep’t of Corr., 77 P.3d 875, 877-78 (Colo. App. 2003). Mandamus relief cannot be granted unless Fetzer demonstrates that: (1) he has a clear right to the relief sought; (2) DOC has a clear duty to perform the act; and (3) he has exhausted all other remedies. Gramiger v. Crowley, 660 P.2d 1279, 1281 (Colo. 1983).
 D. Analysis
 ¶15         This case requires us to analyze how the “one continuous sentence” language in section 17-22.5-101 applies to a PED calculation for an inmate with both consecutive and concurrent sentences where the concurrent sentences have different effective dates. No Colorado appellate court has addressed this issue.
 ¶16         Fetzer contends section 17-22.5-101 applies to all sentences, consecutive and concurrent alike. He argues that DOC must construe all of his sentences as one continuous sentence with an effective date of August 12, 1988 and calculate his PED based on this date.
 ¶17         DOC contends that pursuant to Nowak, “the determination that a [PED] should be calculated based upon one continuous sentence is specific to consecutive sentences.” DOC argues that the correct method for calculating Fetzer’s sentence under the circumstances of his case, where his multiple sentences are primarily concurrent, rather than consecutive, is the governing sentence method. Therefore, DOC contends it must treat Fetzer’s longest sentence, the thirty-year sentence, as his governing sentence and calculate his PED and mandatory release date on parole (MRD) based solely on this sentence.[5]
 ¶18         We disagree with DOC’s contentions and agree with Fetzer’s.
 ¶19         We begin by examining Colorado precedent in this area. With this background in mind, we assess how the one continuous sentence approach applies to both consecutive and concurrent sentences with different effective dates and the proper calculation of a concurrent sentence effective date. Then, we briefly return to the three elements necessary for the issuance of a writ for mandamus.
 1. Colorado Precedent
 ¶20         Title 17 of the Colorado Revised Statutes governs corrections. Article 22.5 addresses “[i]nmate and [p]arole [t]ime [c]omputation.” Section 17-22.5-101 mandates that DOC construe “all sentences” as “one continuous sentence.”
 ¶21         As the supreme court held in Nowak, the General Assembly’s use of the word “shall” in section 17-22.5-101 is unambiguous. Nowak, ¶24, 320 P.3d at 345. Both the supreme court and divisions of our court have emphasized the mandatory nature of this provision. See People v. Santisteven, 868 P.2d 415, 418 (Colo. App. 1993) (“The word ‘shall’ is mandatory. Thus, the Department of Corrections was required to combine all three of defendant’s sentences for purposes of establishing his parole eligibility date.”).
 ¶22         In light of this unambiguous language, the supreme court has held that section 17-22.5-101 requires DOC to aggregate consecutive sentences when computing the PED for an inmate who has received multiple consecutive sentences imposed at different times. In Spoto v. Colorado State Department of Corrections, 883 P.2d 11, 12 (Colo. 1994), an inmate attempted to escape while serving a sentence for second degree murder. The supreme court held that his three-year attempted escape sentence ran consecutively to his seventeen-year murder sentence, resulting in an aggregate twenty-year sentence. Id. at 15-16.
 ¶23         In Nowak, an inmate filed a petition for writ of habeas corpus challenging DOC’s calculation of his PED following revocation of his parole and the imposition of a consecutive twelve-year sentence for felony escape in addition to his prior concurrent eight-year sentences for aggravated motor vehicle theft. ¶¶6-7, 320 P.3d at 343. DOC argued on appeal that applying the one continuous sentence rule in calculating the defendant’s PED violated section 17-22.5-403(1), C.R.S. 2015. Id. at ¶3, 320 P.3d at 342. However, the supreme court, rejecting this contention, held DOC was required to construe the eight-year sentences and the consecutive twelve-year sentence for escape as one continuous sentence in computing Nowak’s PED. Id. at ¶4, 320 P.3d at 342. It further held that, for “the purpose of computing an inmate’s PED, section 17-22.5-101 requires DOC to construe all sentences as one continuous sentence when the inmate has been committed under several convictions with separate sentences[.]” Id.
 ¶24         Divisions of our court also have held that section 17-22.5-101 requires DOC to aggregate consecutive sentences when computing the PED for an inmate who has received multiple consecutive sentences. See Vashone-Caruso v. Suthers, 29 P.3d 339, 340 (Colo. App. 2001) (“When computing the parole eligibility date for an inmate who has received several consecutive sentences imposed at different times, as here, the DOC must first aggregate the sentences.”); Santisteven, 868 P.2d at 418 (finding that DOC properly combined all of the defendant’s sentences and treated them as one continuous sentence before calculating the PED).
 ¶25         Additionally, the supreme court has upheld the propriety of the governing sentence test developed by DOC to determine how to calculate good time and trusty time credits for inmates convicted of offenses occurring before and after July 1, 1979, and thus subject to different statutory good time and trusty time credit schemes. Price v. Mills, 728 P.2d 715 (Colo. 1986). In Price, the supreme court resolved this issue by relying on section 17-22.5-101, which, it concluded, supported DOC’s position “that it should consider all sentences being served by an inmate as one composite sentence.” Id. at 719.
 ¶26         If the inmate’s sentence with the parole provisions effective before July 1, 1979 produced the longest “incarceration effect,” then it was treated as the “governing” sentence. Id. at 718. Accordingly, DOC awarded credits pursuant to that statutory scheme towards the entire composite sentence. Id. If the sentence with the parole provisions effective on or after July 1, 1979 was the “governing” sentence, then DOC applied that credit scheme to the entire hybrid or composite sentence. Id.; see Thiret v. Kautzky, 792 P.2d 801, 808 (Colo. 1990) (holding that the governing sentence is the longest concurrent sentence for which the defendant was sentenced, and the relevant parole provisions of that sentence apply to the entire composite sentence).
 ¶27         In Vaughn v. Gunter, 820 P.2d 659 (Colo. 1991), the supreme court was confronted with the question whether the legislature intended discretionary parole to apply when a defendant was serving concurrent sentences for crimes committed both before and after the date the discretionary parole statute became effective, July 1, 1985.[6] DOC contended that the defendant’s right to mandatory parole was “nullified” by his two subsequent convictions of crimes subject to discretionary parole. Id. at 662. The supreme court held that DOC’s argument would be correct if the defendant had received consecutive sentences, but it concluded that DOC had ignored section 17-22.5-101 and case law interpreting that section. Id. Accordingly, the court held that the governing sentence analysis enunciated in Price applied to determine the application of discretionary or mandatory parole provisions to concurrent sentences and that Vaughn was entitled to a writ of habeas corpus because he was eligible for mandatory parole under the longest of his three concurrent sentences. Id.
 ¶28         Notably, Colorado courts have not applied the governing sentence approach to measure the length or effective date of concurrent sentences subject to mandatory parole provisions. Rather, divisions of our court have held that concurrent sentences imposed at different times or for different periods of time run together only during the period that the sentences overlap. People v. Taylor, 7 P.3d 1030, 1032 (Colo. App. 2000). When two sentences run concurrently, for each day in custody while serving both sentences, the inmate receives credit toward each sentence. Bullard v. Dep’t of Corr., 949 P.2d 999, 1002 (Colo. 1997).
 2. Sentence Calculation
 ¶29         Fetzer contends section 17-22.5-101 mandates that DOC construe “all sentences as one continuous sentence.” We agree. DOC argues that in Nowak, the inmate received multiple consecutive sentences, and therefore, based on those facts, the supreme court distinguished between the PED calculation for consecutive sentences and concurrent sentences. However, section 17-22.5-101, by its plain language, is not limited to consecutive sentences. More importantly, the Nowak court did not address whether an inmate’s PED should be calculated differently for concurrent and consecutive sentences. Accordingly, we do not read Nowak, as DOC argues, to stand for the proposition that the one continuous sentence method applies only to consecutive sentences, while the governing sentence method applies to concurrent sentences. We also note that the inmate in Nowak had two concurrent eight-year sentences and one consecutive twelve-year sentence. See Nowak, ¶5, 320 P.3d at 342. Last, the one continuous sentence language of section 17-22.5-101 does not distinguish between consecutive and concurrent sentences and, therefore, applies to all PED calculations. Id. at ¶4, 320 P.3d at 342 (applying section 17-22.5-101 to Nowak’s two eight-year concurrent sentences and his one twelve-year consecutive sentence).
 ¶30         While the governing sentence approach to determining parole provision application may impact the PED in the sense that it dictates which credits or other features are applicable, it is not a method for calculating sentence length. The governing sentence method applies to multiple concurrent sentences with conflicting parole provisions to determine which parole provision applies to the composite sentence. See Spoto, 883 P.2d at 14. All of Fetzer’s sentences are subject to the same parole provisions, so the governing sentence method does not apply. The governing sentence method stands in contrast not to section 17-22.5-101, but to the consecutive sentence method of determining which parole provisions apply. “[W]here consecutive sentences have been imposed and where the mandatory and discretionary parole statutes both apply,” both of the consecutive sentences must be taken into account in calculating the parole date. Badger v. Suthers, 985 P.2d 1042, 1043 (Colo. 1999) (quoting Spoto, 883 P.2d at 15-16). We emphasize that both of these methods fit under the purview of section 17-22.5-101’s one continuous sentence requirement. Here, DOC determined that under the governing sentence method, Fetzer’s sentence length was thirty years. Contrary to DOC’s contention, the governing sentence method does not warrant the conclusion that, in the case of multiple concurrent sentences, the composite sentence length is the length of the longest sentence. Notably, DOC’s approach effectively reads the word “composite” out of existing case law. Concurrent sentences simply run together during the period that they overlap. Bullard, 949 P.2d at 1002. Therefore, DOC incorrectly used the thirty-year sentence as Fetzer’s sentence length and should have calculated a composite sentence length by determining the length of time the sentences ran together. See Taylor, 7 P.3d at 1032.
 ¶31         Last, DOC must add on Fetzer’s consecutive sentence. DOC’s approach in Fetzer’s case essentially disregarded his eighteen-month consecutive sentence.
 3. Sentence Effective Date
 ¶32         DOC stated Fetzer’s sentence effective date was March 14, 2000, the effective date of his thirty-year sentence. In doing so, DOC incorrectly determined that Fetzer’s governing sentence’s effective date was the effective date for his entire composite sentence. Notably, DOC’s approach ignores the twelve years Fetzer spent in prison prior to the effective date of his last conviction.
 ¶33         In Schubert v. People, 698 P.2d 788, 795 (Colo. 1985), the supreme court held that “concurrent sentences obviously commence at the same time” in a case in which both concurrent sentences had the same effective date. We read this language as limited to circumstances where concurrent sentences share the same effective date. However, in contrast, concurrent sentences do not necessarily begin and end at the same time. Bullard, 949 P.2d at 1002. Accordingly, in circumstances like those presented here, where Fetzer’s convictions had effective dates that spanned a period of twelve years, his concurrent sentences did not commence simultaneously; rather, the composite sentence commences on the initial conviction’s effective date.
 4. Writ of Mandamus
 ¶34         Under the first prong of the mandamus test, Fetzer contends he has a clear right to relief because section 17-22.5-101 mandates DOC construe “all sentences as one continuous sentence.” We agree for the reasons set forth above.
 ¶35         Under the second prong of the mandamus test, we conclude DOC has a clear duty to calculate Fetzer’s PED in the manner described above because section 17-22.5-101 mandates DOC must construe “all sentences as one continuous sentence.” As noted above, both the supreme court and divisions of our court have emphasized the mandatory nature of this provision. See Vaughn, 820 P.2d at 662; Santisteven, 868 P.2d at 418. While DOC has discretion as to when to release Fetzer to parole after his PED, we conclude section 17-22.5-101 imposes on DOC a duty to calculate the correct PED for inmates. See Fields v. Suthers, 984 P.2d 1167, 1173 (Colo. 1999) (finding DOC had a duty to calculate the defendant’s correct PED although the correct PED was more than a year in the future). 
 ¶36         Under the third prong of the mandamus test, we conclude no other remedy is available to Fetzer. Fetzer seeks a remand to the trial court with instructions for correction or an order to DOC to construe his sentences as one continuous sentence and recalculate his PED.[7] Requesting a writ of mandamus is the appropriate remedy for the relief Fetzer seeks. See McKnight v. Riveland, 728 P.2d 1297 (Colo. App. 1986) (analyzing an inmate’s writ of mandamus request for DOC to recalculate his PED). Further, a writ of habeas corpus is not appropriate because Fetzer does not seek immediate release; nor can Fetzer obtain relief under Crim. P. 35, since this case does not concern the legality of the sentences imposed by the trial court. See Fields, 984 P.2d at 1170, 1173.
 5. Error
 ¶37         For the reasons stated above, we conclude the trial court erred. We conclude the error was not harmless because the trial court’s dismissal of Fetzer’s claim prevented him from a PED recalculation under the correct legal analysis. His PED substantially affects his rights, as it is directly tied to his length of incarceration.
 III. Conclusion
 ¶38         We reverse the trial court’s judgment, and the case is remanded for DOC to calculate Fetzer’s PED in accordance with this opinion.
 JUDGE J. JONES and JUDGE HARRIS concur.

 [1] We conclude mandamus relief is appropriate here. While the grant of parole after the PED is discretionary, the requested relief relates to a specific legal issue — the correct calculation of PED — which does not require the exercise of discretion. See Fields v. Suthers, 984 P.2d 1167, 1173 (Colo. 1999) (finding that mandamus relief was appropriate and that the Department of Corrections had a duty to correctly calculate defendant’s PED). Defendants do not dispute the propriety of Fetzer’s case being filed as an action for mandamus relief.
 [2] The court initially sentenced Fetzer to two twenty-year consecutive terms and one sixteen-year concurrent term but later modified Fetzer’s sentence to impose three concurrent twenty-year sentences.
 [3] When a court converts a C.R.C.P. 12(b)(5) motion to dismiss into one for summary judgment, the court must give the parties notice of the changed status of the motion and a “reasonable opportunity to present all material made pertinent to such a motion by C.R.C.P. 56.” C.R.C.P. 12(b); see Horne Eng’g Servs., Inc. v. Kaiser-Hill Co., 72 P.3d 451, 452-53 (Colo. App. 2003) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366, at 501-02 (2d ed. 1990), in turn quoting Fed. R. Civ. P. 12(b)(6)). The trial court erred because it did not give Fetzer notice that it had converted the motion to dismiss into a motion for summary judgment; however, Fetzer did not raise this issue in his opening brief and, therefore, we do not address it. See People v. Plancarte, 232 P.3d 186, 193 (Colo. App. 2009).
 [4] We are not convinced that Fetzer’s response to DOC’s motion to dismiss should be construed as a motion for reconsideration. Under C.R.C.P. 5(f), a pleading or paper filed by an inmate is timely filed when deposited in the institution’s internal mailing system on or before the last day for filing or serving. See also Wallin v. Cosner, 210 P.3d 479, 480 (Colo. App. 2009). A party responding to a motion “shall have 21 days after the filing of the motion or such lesser or greater time as the court may allow in which to file a responsive brief.” C.R.C.P. 121, § 1-15(1)(b). Fetzer timely deposited his answer brief on November 18, 2014, in the prison mail system, as evidenced by the prison mail log; however, for unexplained reasons, the court apparently did not receive the answer brief until after it had issued its initial order. When Fetzer filed his motion asking the court to consider his response and the trial court saw that it had been timely filed, the court should have vacated its original order and then considered DOC’s motion to dismiss anew along with Fetzer’s response.
 [5] The PED is the earliest possible parole release date, which is established by length of sentence, computation of time served, good time credits earned or lost, and governed by statute as calculated by DOC’s office of offender time and release operations. State Bd. of Parole Rule 1.00, 8 Code Colo. Regs. 1511-1. The PED reflects the first date on which an inmate is eligible to make initial parole application. Id. This type of release is discretionary because the parole board may release an inmate at its discretion. Id. In contrast, MRD is a date over which the parole board has no discretion. Id. Mandatory parole is the status of an inmate who was sentenced to one or more terms of imprisonment and has met his or her statutory MRD. Id.
 [6] In Vaughn v. Gunter, 820 P.2d 659 (Colo. 1991), the supreme court apparently erred in its characterization of the statutes at issue in Price v. Mills, 728 P.2d 715 (1986). In Vaughn, the supreme court stated that in Price it considered whether discretionary or mandatory parole applied when an inmate was convicted of offenses committed both before and after July 1, 1979. 820 P.2d at 661. However, in Price, the court addressed the problem created when an individual simultaneously was serving sentences for offenses committed both before and after July 1,1979, thus imposing different discretionary and mandatory good time credit schemes. 728 P.2d at 717. In fact, as noted above, in 1985, the legislature changed the parole statutes to apply discretionary parole when a defendant is serving a sentence for a crime which occurred after July 1, 1985. Vaughn, 820 P.2d at 662.
 [7] Fetzer attaches his proposed calculation of his PED to his brief. We do not address the accuracy of his calculations because the redetermination of his PED requires factual determinations which must be made by DOC.
 
These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here.