Walter PRICE, Petitioner-Appellee,

v.

Richard G. MILLS, Superintendent of Skyline Correctional Facility, and Chase Riveland, Director of the Department of Corrections, Respondents-Appellants.

John Powell JENKINS, Petitioner-Appellant,

v.

Chase RIVELAND, Executive Director, Department of Corrections, Paula Watson, Time Computation Officer, Department of Corrections, Donna Lohmes, Time Computation Officer, Department of Corrections, Lena Dice, Time Computation Officer, Department of Corrections, Gene Tollis, Offender Records Operations, Department of Corrections, State of Colorado, Respondents-Appellees.

John Powell JENKINS, Petitioner-Appellee,

v.

Chase RIVELAND, Executive Director, Department of Corrections, Time Computation Officers, Department of Corrections, State of Colorado, Respondents-Appellants.

Nos. 85SA171, 85SA320.

Supreme Court of Colorado,
In Bank.

Dec. 2, 1986.

David F. Vela, State Public Defender and Kenneth M. Plotz, Deputy State Public Defender, Salida, for petitioner-appellee.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., John Daniel Dailey and Terrence A. Gillespie, Asst. Attys. Gen., Denver, for respondents-appellants.

KIRSHBAUM, Justice.

These consolidated appeals raise questions concerning methods used by the Department of Corrections (the Department) to calculate certain credits established by the General Assembly to reduce the actual amount of time convicted felons remain incarcerated as the result of judicially imposed sentences. In 85SA171, a trial court judgment (85CV18) concluding that the Department erroneously calculated the good time credits applicable to appellee Walter Price's sentence is challenged. In 85SA320, two trial court judgments in two cases, 84CV87 and 84CV256, are involved.[1] In the former case, appellant John Powell Jenkins appeals the trial court's denial of his motion to show cause[2] challenging the Department's calculation of presentence confinement credits for establishing his parole eligibility date in connection with a sentence imposed upon him on July 11, 1983, for a burglary committed after July 1, 1979. In 84CV256, a judgment granting Jenkins' petition for mandamus and requiring the Department to recalculate the good time and earned time credits applicable to Jenkins' parole eligibility date in connection with the same sentence is attacked. We conclude that the Department's method of calculating good time credits for presen-

---

1. The two trial court cases, 84CV87 and 84CV256, were initially appealed to and consolidated by the Court of Appeals as, respectively, 84CA0762 and 85CA0636. Both appeals were transferred to this court prior to judgment, pursuant to § 13–4–109(1), 13 C.R.S. (1973). *See* C.A.R. 50.

2. The initial pleading in 84CV87 appears to be a petition for writ of mandamus, pursuant to C.R.C.P. 104.

tence confinement is proper and, therefore, affirm the trial court's judgment in 84CV87. We also find the Department's method of calculating good time credits for Jenkins and Price to be appropriate and, therefore, reverse the trial court judgments in 84CV256 and 85CV18.

## I

A brief review of certain legislative decisions requiring reduction in time actually served by inmates under sentences imposed by trial courts is necessary to appreciate the issues raised by these appeals.

Two statutory schemes establish the framework within which the Department must compute good time and earned time credits to sentences of inmates in the custody of the Department. Section 17–22.5–201, 8A C.R.S. (1986), hereafter termed "Section 201," governs the award of good time credit to reduce time served by inmates sentenced for crimes committed before July 1, 1979. Sections 17–22.5–301 and –302, 8A C.R.S. (1986), hereafter termed "Section 301," govern calculation of credit for good time and earned time for inmates sentenced for crimes committed on or after July 1, 1979.

The credits established by the General Assembly in Section 201 consist of three components. As administratively denominated by the Department, they are: (1) "statutory good time" under section 17–22.5–201(1); (2) "trusty time" under section 17–22.5–201(2); and (3) "meritorious time" under section 17–22.5–201(3). Statutory good time is legislatively defined as follows:

Unless otherwise provided by law, every inmate confined in a correctional facility of the department who has committed no infraction of the rules or regulations of the department or the laws of the state and who performs in a faithful, diligent, industrious, orderly, and peaceable manner the work, duties, and tasks assigned to him to the satisfaction of the executive director or any of his designees may be allowed time credit reductions as follows: A deduction of two months in each of the first two years, four months in each of the next two years, and five months in each of the remaining years of his term of confinement, and correspondingly for any part of the year if such term of confinement is for less than a year.

§ 17–22.5–201(1). Trusty time is defined as follows:

To those inmates whom the executive director or any of his designees may designate as trusties and who conduct themselves in accordance with departmental rules and perform their work in a creditable manner, upon approval of the executive director or any of his designees, additional good time to that allowed ... in subsection (1) of this section, not to exceed ten days in any one calendar month, shall be credited upon the time remaining to be served, such credit to be allowed only upon the actual number of months served in each year in a correctional facility of the department.

§ 17–22.5–201(2). Meritorious time is defined in the following terms:

The executive director or any of his designees may grant to any inmate confined in a correctional facility additional good time credit to that allowed under subsections (1) and (2) of this section, not to exceed five days per month for each calendar year remaining to be served, for the following reasons:

(a) Meritorious service by an inmate; or

(b) Outstanding performance of assigned tasks in correctional industries.

§ 17–22.5–201(3).

Each inmate is presumed by the Department to have accrued the maximum allowable statutory good time and trusty time credits. Statutory good time and trusty time are disallowed by the Department only after a hearing where the existence of misconduct warranting the disallowance is established. Meritorious time is awarded on a discretionary basis after a period of positive behavior is exhibited by the inmate.

The credits allocable under Section 301 are divided into two components: "good time" under section 17–22.5–301 and "earned time" under section 17–22.5–302. Good time is described as follows:

Each person sentenced for a crime committed on or after July 1, 1979 ... whose conduct indicates that he has substantially observed all of the rules and regulations of the institution or facility in which he has been confined and has faithfully performed the duties assigned to him shall be entitled to a good time deduction of fifteen days a month from his sentence.

§ 17–22.5–301(1). Under this provision, an inmate is entitled to one day of credit against a sentence for each day served.

Earned time is defined as follows:

In addition to the good time authorized in section 17–22.5–301, earned time, not to exceed thirty days for every six months of incarceration, may be deducted from the inmate's sentence upon a demonstration to the department by the inmate that he has made substantial and consistent progress in each of the following categories:

(a) Work and training, including attendance, promptness, performance, cooperation, care of materials, and safety;

(b) Group living, including housekeeping, personal hygiene, cooperation, social adjustment, and double bunking;

(c) Participation in counseling sessions and involvement in self-help groups;

(d) Progress toward the goals and programs established by the Colorado diagnostic program.

§ 17–22.5–302. In essence, good time under section 17–22.5–301 is analogous to statutory good time and trusty time under sections 17–22.5–201(1) and (2).

In administering Section 301, the Department assumes that inmates are entitled to receive the good time credits; these credits are disallowed only after misconduct has been established. The earned time credits established by section 17–22.5–302, which are analogous to the meritorious time credits established by section 17–22.5–201(3), are awarded discretionarily by the Department.

## II

■ At the time he began serving the eight-year sentence for the burglary he committed in 1982, Jenkins was on parole from three concurrent sentences of indeterminate to twenty years, each imposed in 1977. His parole status was revoked in October of 1983. In October of 1981, Price received a sentence of eight years for an offense committed after July 1, 1979, to be served concurrently with the following two prior consecutive sentences: indeterminate to fifteen years, imposed in 1974, and indeterminate to five years, imposed in 1976. Thus, at the time these cases were filed, both Jenkins and Price were simultaneously serving sentences for offenses committed before and on or after July 1, 1979.[3]

When calculating and applying credits to sentences of inmates in these circumstances, the Department has not adopted separate administrative systems applicable to sentences imposed for offenses committed before and on or after July 1, 1979. Instead, the Department applies a single system of credits to a composite "governing sentence" created for each such inmate by considering all of the inmate's sentences together to arrive at a minimum governing sentence and a maximum governing sentence. The Department applies the credits established by Section 201 to this composite sentence if a sentence for any pre-July 1, 1979, offense produces the longest incarceration effect for the inmate. Section 301 is applied to the composite sentence if the incarceration effect of any or all sentences for pre-July 1, 1979, offenses is shorter than the incarceration effect of a sentence for an offense committed on or after July 1, 1979.

---

**3.** Testimony at trial indicated that some 300 inmates under the Department's jurisdiction fall into this category.

Jenkins and Price have each been accorded a governing sentence of eight to twenty years by the Department: eight years is the minimum governing sentence and twenty years is the maximum governing sentence. Credits for time spent in jail awaiting sentencing have been applied to those governing sentences to arrive at minimum and maximum control dates. The minimum control date is the date on which the inmate becomes eligible for parole, assuming he receives no other credits against his sentence. The maximum control date is the maximum potential period of incarceration, assuming no other credits. Section 201 credits have been applied to the minimum and maximum control dates to arrive at projected parole eligibility and projected mandatory release dates.

The sentences of Jenkins and Price with the maximum range of twenty years have the longest incarceration effects. Because in each case the crimes underlying the twenty-year sentence were committed prior to July 1, 1979, the Department has applied the credits established by Section 201 to the minimum and maximum control dates to determine the minimum parole eligibility and mandatory release dates of these inmates.

## III

Sections 201 and 301 by necessity lodge discretion in the Department for administrative purposes. Neither section 201 nor section 301 addresses the problem created when one individual is simultaneously serving two or more sentences, one of which was imposed for an offense committed before July 1, 1979. However, section 17–22.5–101, 8A C.R.S. (1986), does address this issue as follows:

> For the purposes of this article, when any inmate has been committed under several convictions with separate sentences, the department shall construe all sentences as one continuous sentence.

This statute lends support to the Department's position that it should consider all sentences being served by an inmate as one composite sentence. It indicates a legislative decision that for purposes of administering the various time-reducing credits defined by the General Assembly, the Department must employ some type of hybrid or "composite" sentence to which the credits may be applied.

It is also noteworthy that section 17–22.5–304, 8A C.R.S. (1986), states that section 301 credits may be applied "only to those persons convicted of crimes committed on or after [July 1, 1979]," and that "[n]o person subject to the good time provisions of [section 201] shall be eligible for any of the provisions authorized by [section 301]." This language reflects an additional legislative decision that persons convicted of more than one offense may not receive double credits while serving sentences resulting from the circumstance that the offenses were committed both before and on or after July 1, 1979. This express legislative policy lends further support to the Department's position that it is authorized to administer the credit statutes on a unitary basis.

The Department's interpretation of its responsibility to administer all of these statutes is reasonable and contravenes no legislative or constitutional rights or policies. See Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (prisoners have no constitutional rights to good time credits). In these circumstances, the Department's administrative interpretation of the statutes is entitled to great weight. See Travelers' Indemnity Co. v. Barnes, 191 Colo. 278, 552 P.2d 300 (1976); Smith v. Myron Stratton Home, 676 P.2d 1196 (Colo.1984). While other systems for calculating these credits and applying them to a composite sentence might also be acceptable, we find no basis to require the Department to alter its present system for calculating statutory good time and trusty time credits for offenses committed before, on or after July 1, 1979. Consequently, the trial court judgments in 84CV256 and 85CV18 are reversed.

## IV

■ On July 11, 1983, Jenkins was sentenced by the Jefferson County District Court to a term of eight years. The sentencing court ordered credit for eighty-five days of presentence confinement. The De-

partment credited the eighty-five days spent in confinement and another eighty-five days of good time to the eight-year sentence to arrive at a potential period of incarceration of seven years, six months and ten days. When added to the date of his sentence, this produced a control date of January 1, 1991. Section 201 credits were applied to the control date to arrive at a projected parole eligibility date.

Jenkins contends that his eight-year sentence should first be reduced by the good time credits under Section 301. From the remaining four years, he contends that 170 days (eighty-five days of presentence confinement plus eighty-five days of good time) should be deducted. Jenkins' calculations effectively give double credit for good time credits on presentence confinement. As we have indicated, the General Assembly, in section 17–22.5–304, has prohibited the double award of good time credits. The fact that an inmate committed crimes both before and on or after July 1, 1979, does not change that result. Adoption of Jenkins' argument would contravene this legislative policy. We, therefore, reject that argument and, accordingly, affirm the trial court's judgment in 84CV87.

The judgments in 85CV18 and 84CV256 are reversed. The judgment in 84CV87 is affirmed.