Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE

**2017 CO 77**

**No. 16SC361, <u>Exec. Dir. of the Colo. Dep't of Corr. v. Fetzer</u>—Parole Eligibility.**

The department of corrections petitioned for review of the court of appeals'
judgment reversing an order of the district court that denied Fetzer's petition pursuant
to C.R.C.P. 106(a)(2).  <u>See</u> <u>Fetzer v. Exec. Dir. of the Colo. Dep't of Corr.</u>, 2016 COA 7M,
___ P.3d ___, <u>as modified on denial of reh'g</u> (Apr. 7, 2016).  Fetzer's petition sought an
order compelling the recalculation of his parole eligibility date, asserting that the
department's "governing sentence" method, which calculated his parole eligibility date
solely on the basis of the longest of his concurrent sentences, violated the statutory
requirement that his multiple sentences be treated as one continuous sentence.  The
court of appeals reversed and remanded for recalculation, reasoning both that, contrary
to the department's understanding, the statutory continuous sentence requirement
applies to concurrent as well as consecutive sentences and that the department's
"governing sentence" method of calculation could not apply to Fetzer's sentences
because they were all subject to the same statutory parole provisions.

The supreme court holds that, because the "governing sentence" theories that
have previously been sanctioned by this court have served to determine the statutory

parole and discharge provisions applicable to a single continuous sentence and the manner in which those provisions can be meaningfully applied to it, rather than as an alternative to the statutory continuous sentence requirement itself, the department erred in simply substituting Fetzer's longest sentence for the required continuous sentence. Because, however, Fetzer's multiple sentences are not all subject to the same statutory parole provisions, as indicated in the court of appeals' opinion, reference to a governing sentence, or some comparable means of determining the applicable incidents of his parole, may remain necessary to the calculation of Fetzer's parole eligibility date. The judgment of the court of appeals reversing the district court's order is therefore affirmed. Its remand order, directing the department to recalculate Fetzer's parole eligibility date in accordance with its opinion, however, is reversed, and the case is remanded with directions that it be returned to the district court for further proceedings.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

### 2017 CO 77

### Supreme Court Case No. 16SC361
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 15CA83

### Petitioners:

Executive Director of the Colorado Department of Corrections and Warden for the Buena Vista Correctional Facility,

v.

### Respondent:

Raymond Lee Fetzer.

### Judgment Affirmed in Part and Reversed in Part
*en banc*
June 26, 2017

**Attorneys for Petitioners:**
Cynthia H. Coffman, Attorney General
Nicole S. Gellar, Senior Assistant Attorney General
 *Denver, Colorado*


**Respondent Raymond Lee Fetzer, Pro Se**
 *Buena Vista, Colorado*


**JUSTICE COATS** delivered the Opinion of the Court.

¶1     The department of corrections petitioned for review of the court of appeals' judgment reversing an order of the district court that denied Fetzer's petition pursuant to C.R.C.P. 106(a)(2).  See Fetzer v. Exec. Dir. of the Colo. Dep't of Corr., 2016 COA 7M, ___ P.3d ___, as modified on denial of reh'g (Apr. 7, 2016).  Fetzer's petition sought an order compelling the recalculation of his parole eligibility date, asserting that the department's "governing sentence" method, which calculated his parole eligibility date solely on the basis of the longest of his concurrent sentences, violated the statutory requirement that his multiple sentences be treated as one continuous sentence.  The court of appeals reversed and remanded for recalculation, reasoning both that, contrary to the department's understanding, the statutory continuous sentence requirement applies to concurrent as well as consecutive sentences and that the department's "governing sentence" method of calculation could not apply to Fetzer's sentences because they were all subject to the same statutory parole provisions.

¶2     Because the "governing sentence" theories that have previously been sanctioned by this court have served to determine the statutory parole and discharge provisions applicable to a single continuous sentence and the manner in which those provisions can be meaningfully applied to it, rather than as an alternative to the statutory continuous sentence requirement itself, the department erred in simply substituting Fetzer's longest sentence for the required continuous sentence.  Because, however, Fetzer's multiple sentences are not all subject to the same statutory parole provisions, as indicated in the court of appeals' opinion, reference to a governing sentence, or some comparable means of determining the applicable incidents of his parole, may remain

2

necessary to the calculation of Fetzer's parole eligibility date. The judgment of the court of appeals reversing the district court's order is therefore affirmed. Its remand order, directing the department to recalculate Fetzer's parole eligibility date in accordance with its opinion, however, is reversed, and the case is remanded with directions that it be returned to the district court for further proceedings.

## I.

¶3 Raymond Fetzer, who was and remains in the custody of the Colorado Department of Corrections as the result of multiple convictions, filed a petition in the district court, pursuant to C.R.C.P. 106(a)(2), to compel the department to recalculate his eligibility for parole. As reflected in the pleadings, Fetzer has been convicted, over a period of years extending back to 1988, of aggravated robbery, first degree burglary, robbery of the elderly, possession of a weapon by a previous offender, introducing contraband, and three separate counts of aggravated robbery—menacing the victim. These convictions have resulted in three concurrent sentences of 20 years each, with an effective date of August 12, 1988; one sentence of 8 years, with an effective date of May 25, 1990, to be served concurrently with the previous sentences; one sentence of 18 months, with an effective date of November 25, 1991, to be served consecutively with all previous sentences; one sentence of 22 years, with an effective date of June 17, 1999, to be served concurrently with all previous sentences; and two sentences of 30 years each, with effective dates of March 14, 2000, to be served concurrently with each other and with all previous sentences.

¶4 Fetzer alleged that by designating one of his 30-year sentences, being his sentences with the longest incarceration effect, as the governing sentence, and computing his parole eligibility date solely on the basis of that sentence, the department failed to comply with a statutory requirement that all of his separate sentences be treated as a single continuous sentence. Fetzer further alleged that if the department had instead considered all of his convictions as one continuous sentence running from the date of his first sentence, August 12, 1988, and had calculated his parole eligibility date by allowing credits during each relevant time period according to the statutory provisions in effect at the time, he would have become eligible to be considered for parole several years earlier.

¶5 The department moved to dismiss on the grounds that the statutory continuous sentence requirement applies only to consecutive sentences and that the incidents of parole applicable to an inmate serving multiple concurrent sentences are to be determined according to the "governing sentence" method. By considering Fetzer's longest concurrent sentence as the "governing sentence," and not only applying the particular parole provisions applicable to that sentence but applying them as if that sentence were the only sentence currently being served by him, the department calculated that Fetzer will not become eligible for parole until June 2019, and that he will not reach his mandatory release date until August 2026.

¶6 The district court granted the department's motion and dismissed the petition. The court of appeals, however, reversed, concluding that the plain language of section 17-22.5-101 of the revised statutes, requiring as it does that all of an inmate's separate

4

sentences be construed as one continuous sentence, applies to all separate sentences, whether ordered to be served concurrently or consecutively. Further, surveying this court's precedent, the intermediate appellate court concluded that the "governing sentence" method is applicable only to inmates whose various sentences are subject to conflicting parole provisions, and understanding all of Fetzer's sentences to be subject to the same parole provisions, it concluded that the "governing sentence" method cannot apply to them. It therefore remanded for the department to recalculate Fetzer's parole eligibility date in accordance with its opinion.

¶7     The department of corrections petitioned for a writ of certiorari.

## II.

¶8     For purposes of administering a criminal convict's sentence, this jurisdiction has long required that his separate sentences be construed as one continuous sentence. See, e.g., In re Packer, 33 P. 578, 580 (Colo. 1893) (relying on "one continuous sentence" rule from 1876 parole statute as support for imposing consecutive sentences for five voluntary manslaughter convictions). Currently, section 17-22.5-101, C.R.S. (2016), imposes a seemingly clear command: "For the purposes of this article, when any inmate has been committed under several convictions with separate sentences, the department shall construe all sentences as one continuous sentence." Neither this statute nor any of its predecessors, however, has ever provided guidance concerning the eventuality of disparate statutory parole provisions otherwise applicable to the various sentences comprising the mandated continuous sentence. Largely as the result of a series of dramatic changes since the late 1970s in the nature and philosophy of

criminal sentencing in this jurisdiction, including the treatment of parole supervision, this court has been forced on a number of occasions to review the practices of the department of corrections in administering the continuous sentence requirement.

¶9    Prior to 1979, criminal courts were required to sentence convicted felons to an indeterminate term with fixed minimum and maximum limits, leaving the parole board tremendous discretion within that range to determine whether, when, and for how long to release an inmate to parole.  See Ankeney v. Raemisch, 2015 CO 14, ¶ 9, 344 P.3d 847, 849–50.  In 1979, however, the legislature enacted what has been referred to as a "determinate sentencing system," in which a felony offender was sentenced to a specific term of years, with an additional statutorily mandated term of parole to be served upon discharge from incarceration.  Id.; Thiret v. Kautzky, 792 P.2d 801, 803–04 (Colo. 1990).  In that particular sentencing scheme, the parole board lost all discretion concerning whether, when, and for how long to release an offender to parole.  Thiret, 792 P.2d at 803–04.  Importantly, when an inmate became "eligible" for parole under that framework, he was also entitled to release to serve the statutorily prescribed period of parole.  Id.

¶10    In 1985, the legislature shifted its sentencing philosophy by enacting what has been referred to as a "modified determinate sentencing system," restoring much discretion to the parole board to determine whether, when, and for how long to release an otherwise eligible offender to parole, within a range extending from the date upon which he became eligible for parole until the date upon which he had fully discharged his sentence.  See id.; Renneke v. Kautzky, 782 P.2d 343, 346 (Colo. 1989).  Finally, in

1993, the legislature fundamentally altered the sentencing system once more, this time leaving discretion with the parole board to determine whether and when to release an eligible offender to parole, any time before his release would be mandated, but imposing statutorily prescribed periods of parole for most classes of offenders, which parole terms then would become a separate component of the sentence, to be fully served whether the offender had already completed the full term of incarceration to which he was sentenced or not. Ankeney, ¶ 10, 344 P.3d at 850; People v. Norton, 63 P.3d 339, 343 (Colo. 2003). Each of these schemes reflects a different concept of parole, with different characteristics concerning whether parole is part of or separate from the sentence judicially imposed, whether early release is a right or a privilege, and whether the term of parole supervision should be fixed or should vary with the circumstances and behavior of each individual offender.

¶11 Over a similar period, the legislature enacted substantial, although not always directly corresponding, changes to the statutes prescribing the calculation of both parole eligibility and ultimate discharge dates. Before July 1979, the statutory scheme provided for various credits capable of rendering an inmate eligible for parole before reaching even the minimum limit of his indeterminate sentence. See Ankeney, ¶ 11, 344 P.3d at 850; §§ 17-22.5-201 to -203, C.R.S. (2016). For crimes committed after July 1, 1979, but before 1990, the statutory scheme provided for good time and earned time credits, which, although not constituting the actual service of his sentence, rendered the inmate eligible for parole before serving his full determinate sentence. See Ankeney, ¶ 11, 344 P.3d at 850; §§ 17-22.5-301 to -307, C.R.S. (2016). By the very nature of the "determinate

7

sentencing system" that existed until mid-1985, eligibility for parole alone mandated release to a statutorily-predetermined period of parole. See Bynum v. Kautzky, 784 P.2d 735, 738–39 (Colo. 1989). Although largely the same regimen for providing credits remained in place until 1990, eligibility for parole in the "modified determinate sentencing system," which became effective in mid-1985, no longer required release to a predetermined period of parole but rather placed the matter in the discretion of the parole board, permitting it to release an eligible inmate any time before reaching his mandatory release date, for any period of parole not to exceed the time remaining before reaching that mandatory release date. See Jones v. Martinez, 799 P.2d 385, 387 (Colo. 1990).

¶12    Finally, in 1990, the legislature added an entirely new scheme for parole eligibility and discharge from custody, abandoning the concept of good time altogether, in favor of a new formula for parole eligibility, making most felony offenders eligible after the service of a prescribed percentage of the sentence imposed upon them—either 50% or 75%, depending upon the inmate's particular crime and prior record of convictions—less earned time granted in accordance with the provisions of the new scheme. See Ankeney, ¶ 12, 344 P.3d at 850–51; §§ 17-22.5-401 to -406, C.R.S. (2016). The new scheme was generally made applicable to all offenders sentenced for crimes committed after July 1, 1979, thereby largely superseding the pre-1990 system of eligibility and discharge, but because it expressly excluded certain pre-1990 offenders who failed to meet specific criteria, it did not fully replace that pre-1990 system, and instead coexists alongside it. See Ankeney, 2015 CO 14, 344 P.3d 847; § 17-22.5-406(3).

8

¶13 In this legislative environment, it has not been uncommon to encounter inmates suffering under separate sentences, imposed under different sentencing frameworks, often with incompatible provisions governing the service of those sentences—implicating, among other things, the relationship between incarceration and parole as component parts of a sentence, the mandatory or discretionary nature of release to parole, and the determination of both eligibility for parole and the actual service of a sentence. In 1986, this court first approved the department's reliance on the offense that produces the longest incarceration effect to calculate the credits legislatively authorized to reduce the actual amount of time convicted felons remained incarcerated. Price v. Mills, 728 P.2d 715 (Colo. 1986). In Price, where the inmates suffered under both indeterminate sentences with longer incarceration effects, under the pre-1979 sentencing statute, and concurrent shorter determinate sentences, under the post-1979 determinate sentencing system, in order to comply with the continuous sentence requirement, the department applied a single system of credits from the pre-1979 statutes to a "composite 'governing sentence,'" created by considering the sentences together to arrive at a minimum governing sentence, equal to the inmates' determinate sentence, and a maximum governing sentence, equal to the maximum end of the inmates' indeterminate sentence. Id. at 718.

¶14 We concluded that the requirement for one continuous sentence "indicate[d] a legislative decision that for purposes of administering the various time-reducing credits defined by the General Assembly, the department must employ some type of hybrid or 'composite' sentence to which the credits may be applied." Id. at 719. Finding that the

9

legislature also intended that persons convicted of more than one offense not receive double credits, we upheld the department's solution, concluding that its interpretation of its responsibility to administer all of these statutes was reasonable and contravened no legislative or constitutional rights or policies. Id. Under such circumstances, we held that the department's "administrative interpretation of the statutes is entitled to great weight." Id. Two years later, despite recognizing that the pre- and post-1979 statutes might be interpreted to mandate separate good time credit calculations for the defendant's separate consecutive sentences, we reaffirmed our willingness to defer to the department's administrative interpretation, relying on the sentence with the longest incarceration effect, even where the separate sentences were ordered to run consecutively, as long as that interpretation was "reasonable and contravene[d] no legislative or constitutional rights or policies." People v. Broga, 750 P.2d 59, 63 (Colo. 1988).

¶15    In the ensuing decade, with regard to inmates with separate sentences at least one of which would otherwise be subject to mandatory release upon becoming eligible for parole and at least one of which would otherwise be subject to discretionary release upon becoming eligible, we began to refer to governance of the continuous sentence by the provisions applicable to the sentence with the longest incarceration effect as a governing sentence "concept," "rule," "principle," "theory," or "analysis." See Spoto v. Dep't of Corr., 883 P.2d 11, 14 (Colo. 1994); Vaughn v. Gunter, 820 P.2d 659, 662 (Colo. 1991). With regard to the determination of an inmate's mandatory release date when his continuous sentence included a sentence subject to mandatory parole as well as a

sentence subject to discretionary parole, we concluded that a governing sentence analysis was necessary when the sentences were ordered to run concurrently, Vaughn, 820 P.2d at 661–62; Thiret, 792 P.2d at 807–08, but was not necessary, and could not control, when they were ordered to run consecutively, Badger v. Suthers, 985 P.2d 1042, 1043–44 (Colo. 1999); Spoto, 883 P.2d at 14–15. With regard to the latter situation, we reasoned that regardless of the parole characteristics otherwise governing the longer sentence, the effect of a sentence as to which parole was merely discretionary, following consecutively upon a sentence as to which parole was mandatory, would necessarily be to "nullify" or preclude the mandatory release of the inmate. Spoto, 883 P.2d at 15. Because the inmate's parole eligibility date in these pre- and post-1985 cases would be governed by the same credit provisions in any event, the ultimate question before this court was simply whether the inmate's parole eligibility and mandatory release dates would necessarily be identical.

¶16 We have, however, never suggested that there is only one governing sentence "method" or "methodology," which must apply to concurrent separate sentences for all purposes and which may not apply to consecutive separate sentences for any purpose. Similarly, we have never sanctioned a governing sentence methodology that would permit the calculation of an inmate's parole eligibility date solely on the basis of his longest concurrent sentence, in lieu of a composite continuous sentence accounting for all his separate sentences. Rather, the composite governing sentence has always controlled as an application of—not a substitute for—the statutorily required one continuous sentence. See, e.g., Vaughn, 820 P.2d at 661–62; Thiret, 792 P.2d at 808;

11

Broga, 750 P.2d at 63; Price, 728 P.2d at 719. In those few cases in which we have approved reliance on an inmate's longest sentence to determine the applicable credit or sentencing scheme, the longest or governing sentence has had either the earliest effective date of all the inmate's separate sentences or an effective date coinciding with those of the inmate's other separate sentences, and therefore the starting point of the governing sentence coincided with the starting point of the composite continuous sentence.

¶17 While the department's interpretation of its responsibilities to administer relevant statutory mandates is entitled to great weight, in this case the department offers no interpretation of the continuous sentence requirement consistent with the governing sentence method it uses to calculate Fetzer's parole eligibility. Quite the contrary, the department makes clear that it considers its governing sentence method, as applied to concurrent sentences, to be an exception to the statutory requirement, mandated by the prior decisions of this court. As we have explained, the department errs in construing the precedents of this court as having sanctioned its current governing sentence method at all, much less as having directed that it be applied in lieu of the continuous sentence requirement of section 17-22.5-101.

## III.

¶18 Beyond merely finding that the department erred in calculating Fetzer's parole eligibility date solely on the basis of his longest sentence, the court of appeals also opined concerning the calculation of Fetzer's parole eligibility date on remand. Of particular note, the court of appeals summarily concluded, in apparent reference to the

12

applicability of part 4 of article 22.5 to all but expressly excluded offenders whose crimes were committed on or after July 1, 1979, that all of Fetzer's sentences are subject to the same parole provisions and that the governing sentence method, therefore, cannot apply to them. Apart from the fact that both this court and the court of appeals itself have determined that the novel governing sentence method advocated here by the department violates the continuous sentence requirement and therefore may not be applied under any circumstances, we believe a broad rule to the effect that no governing sentence principle could ever be proper in administering part 4 would be both precipitous and unnecessarily restrictive of the department's discretion.

¶19 While part 4 of article 22.5 largely supersedes the credit provisions of part 3, it contains numerous exclusions for offenders already incarcerated on June 7, 1990, which are hardly straightforward and have not yet been fully and finally litigated. See § 17-22.5-406, C.R.S. (2016); see also Ankeney, ¶ 21 & n.15, 344 P.3d at 855 & n.15. Perhaps even more importantly, the provisions of part 4 itself provide for the disparate treatment of offenders, not only for purposes of parole eligibility but also based on such considerations as the duration of parole, the possible consequences of revocation, and the entitlement to ultimate discharge of sentence, based upon the particular time frame in which their crimes were committed. See, e.g., §§ 17-22.5-403(1)–(3.5) (requiring service of either 50% or 75% of sentence depending upon crime and offender's criminal record); 17-22.5-403(5) –(7) (dictating different permissible periods of parole for pre- and post-1993 crimes); 17-22.5-403(8) (establishing different incidents of parole for sex offenders); cf. Thiret, 792 P.2d at 803–07 (applying governing sentence when offenses

13

were committed on same date but were nonetheless subject to more than one set of parole rules). It is the responsibility of the department to fairly and consistently administer an inmate's statutorily required continuous sentence, whether disparate provisions otherwise governing the inmate's separate sentences result from subsequent statutory amendments or not.

¶20 Because the department erroneously calculated Fetzer's parole eligibility date on the basis of his last and longest sentence alone, it has not yet been faced with calculating and determining the various incidents of parole that should apply to a composite continuous sentence encompassing all of his separate sentences. As we have indicated in the past, in light of the practicalities inherent in administering the complex of sentencing and parole mandates imposed by statute, the department's administrative interpretations are entitled to great weight. We have in the past held the department's decision to apply some form of governing sentence theory, or some other theory or device altogether, in administering the relevant class of composite continuous sentences to be a matter within its expertise and discretion. Whether or not other systems of determining the applicable parole statutes and applying them to the composite continuous sentences mandated by section 17-22.5-101 might also be acceptable, unless the methodology selected by the department contravenes a statute or the constitutional rights of an inmate, it will be upheld. Price, 728 P.2d at 719.

**IV.**

¶21 Because the "governing sentence" theories that have previously been sanctioned by this court have served to determine the statutory parole and discharge provisions

14

applicable to a single continuous sentence and the manner in which those provisions can be meaningfully applied to it, rather than as an alternative to the statutory continuous sentence requirement itself, the department erred in simply substituting Fetzer's longest sentence for the required continuous sentence. Because, however, Fetzer's multiple sentences are not all subject to the same statutory parole scheme, as indicated in the court of appeals' opinion, reference to a governing sentence, or some comparable means of determining the applicable incidents of his parole, may remain necessary to the calculation of Fetzer's parole eligibility date. The judgment of the court of appeals reversing the district court's order is therefore affirmed. Its remand order, directing the department to recalculate Fetzer's parole eligibility date in accordance with its opinion, however, is reversed, and the case is remanded with directions that it be returned to the district court for further proceedings.