Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's
homepage at http://www.courts.state.co.us. Opinions are also
posted on the Colorado Bar Association's homepage at
http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 21, 2022

**2022 CO 33**

**No. 21SC52, *Owens v. Williams*—Parole Eligibility Calculation—
One-Continuous-Sentence Rule—§ 17-22.5-101, C.R.S. (2021)—§ 17-22.5-403,
C.R.S. (2021)—Hybrid Method of Calculating Sentence.**

In this case, the supreme court considers the method of calculation
employed by the Colorado Department of Corrections ("DOC") to determine the
parole eligibility date for the defendant, who is serving three consecutive prison
sentences. Colorado law requires that the defendant's sentences be treated as a
single continuous sentence for purposes of calculating his parole eligibility date.
What complicates matters is that one of the defendant's sentences is subject to a
statutory provision that renders him parole eligible after serving 50% of the
sentence, while the other two sentences are subject to a statutory provision that
renders him parole eligible after serving 75% of those sentences. The question is
whether the defendant is eligible for parole after serving 50%, 75%, or some other
percentage of his one continuous sentence.

The supreme court concludes that, under the specific circumstances present, the DOC is required to determine the parole eligibility date for the defendant's one continuous sentence by employing a hybrid system that effectuates both of the calculation rules. Consequently, the DOC must apply the 50% rule to the sentence subject to that rule and the 75% rule to the two sentences subject to that rule. After doing so, the DOC must combine the resulting calculations to determine the parole eligibility date for the defendant's single continuous sentence. This system at once honors the two different calculation rules and the one-continuous-sentence requirement.

Because the court of appeals erroneously approved the non-hybrid methodology used by the DOC to calculate the defendant's parole eligibility date, the judgment is reversed. However, because the DOC has since recalculated the defendant's parole eligibility date, and because the new calculation is consistent with this opinion, no further action is required. Accordingly, the matter is remanded with instructions to simply return the case to the district court.

**The Supreme Court of the State of Colorado**
2 East 14th Avenue • Denver, Colorado 80203
_____

**2022 CO 33**
_____

**Supreme Court Case No. 21SC52**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 19CA890
_____

**Petitioner:**

Nathanael E. Owens,

v.

**Respondents:**

Mary Carlson, Scott Dauffenbach, and Dean Williams.
_____

**Judgment Reversed**
*en banc*
June 21, 2022
_____

**Attorneys for Petitioner:**
Squire Patton Boggs (US) LLP
Brent R. Owen
Samuel B. Ballingrud
    *Denver, Colorado*


**Attorneys for Respondents:**
Philip J. Weiser, Attorney General
Nicole Gellar, First Assistant Attorney General
    *Denver, Colorado*

**JUSTICE SAMOUR** delivered the Opinion of the Court, in which **CHIEF JUSTICE BOATRIGHT, JUSTICE MÁRQUEZ, JUSTICE HOOD, JUSTICE GABRIEL, JUSTICE HART**, and **JUSTICE BERKENKOTTER** joined.

JUSTICE SAMOUR delivered the Opinion of the Court.

¶1    There is an old saying that lawyers can't do math.  While this is a tired stereotype, there is no question that some lawyers and math just don't mix.  *See Jackson v. Pollion*, 733 F.3d 786, 788 (7th Cir. 2013) (Posner, J.) ("Innumerable are the lawyers who explain that they picked law over a technical field because they have a 'math block' . . . .").  For that reason, much like the "some assembly required" warning on certain products, we start off by cautioning that there is "some math required" in this opinion.  Fear not, however, for it is simple math and instructions are included.

¶2    This case calls on us to review the method of calculation employed by the Colorado Department of Corrections ("DOC") to determine the parole eligibility date for Nathanael E. Owens, who is serving three consecutive prison sentences.  There is no dispute that Colorado law requires that Owens's sentences be treated as a single continuous sentence for purposes of calculating his parole eligibility date.  What complicates matters is that one of Owens's sentences is subject to a statutory provision that renders him parole eligible after serving 50% of the sentence, while the other two sentences are subject to a statutory provision that renders him parole eligible after serving 75% of those sentences.  So, is Owens eligible for parole after serving 50%, 75%, or some other percentage of his one continuous sentence?

¶3    The DOC applied the 75% rule to all three of Owens's consecutive sentences, reasoning that two of them were subject to that rule. But, in so doing, it applied the 75% rule to the sentence that was subject to the 50% rule. A division of the court of appeals nevertheless approved this methodology. It held that the DOC had discretion to apply just one calculation rule (the 75% rule) to the entirety of Owens's single continuous sentence.

¶4    We recognize that the DOC is vested with broad discretion in deciding how to calculate the parole eligibility date for an inmate's one continuous sentence. But we've made clear that such discretion isn't unfettered and does not permit the DOC to violate a legislative enactment. Because the methodology selected by the DOC and approved by the division here contravened two statutory provisions (the 50% rule it failed to apply and the 75% rule it applied without authority), we cannot uphold it.

¶5    Instead, we agree with Owens that, under the specific circumstances present, the DOC is required to determine the parole eligibility date for his one continuous sentence by employing a hybrid system that effectuates both of the calculation rules. Consequently, the DOC must apply the 50% rule to the sentence subject to that rule and the 75% rule to the two sentences subject to that rule. After doing so, the DOC must combine the resulting calculations to determine the parole eligibility date for Owens's single continuous sentence. This system at once

3

honors the two different calculation rules and the one-continuous-sentence requirement.

¶6 Where we part ways with Owens is his alternative contention that none of his sentences fall within the scope of the 75% calculation rule. Contrary to Owens's assertion, his two sentences for aggravated robbery are governed by the 75% rule.

¶7 Because the division erroneously approved the non-hybrid methodology used by the DOC to calculate Owens's parole eligibility date, we reverse. However, because the DOC has since recalculated Owens's parole eligibility date, and because the new calculation is consistent with this opinion, no further action is required. Accordingly, we remand with instructions to simply return the case to the district court.

## I. Facts and Procedural History

¶8 Owens is serving three consecutive prison sentences in the DOC totaling 24 years: a 4-year sentence for vehicular eluding (a class 5 felony) and two 10-year sentences for aggravated robbery (class 3 felonies). The DOC initially determined Owens's parole eligibility date by using a hybrid method: calculating 75% of each of his sentences for aggravated robbery (75% of 10 years or $.75 \times 10 = 7.5$ years); calculating 50% of his sentence for vehicular eluding (50% of 4 years or $.50 \times 4 = 2$ years); and combining the resulting calculations (7.5 years + 7.5 years + 2 years =

4

17 years). That led the DOC to conclude that Owens would be eligible for parole after serving 17 years of his one continuous sentence.

¶9 Pursuant to C.R.C.P. 106(a)(2), Owens sued several employees of the DOC seeking a writ of mandamus on the ground that the DOC had improperly calculated his parole eligibility date. Specifically, Owens challenged the DOC's application of the 75% rule to his aggravated robbery sentences.

¶10 The DOC filed a motion to dismiss. First, it took issue with Owens's allegation that the 75% rule didn't apply to his aggravated robbery sentences. Second, it announced that it had recalculated Owens's parole eligibility date by treating his three sentences as one continuous sentence and applying the 75% rule to the composite 24-year sentence, resulting in a parole eligibility date about a year later than the originally calculated date (75% of 24 years or .75 x 24 = 18 years). The DOC justified its change of heart by pointing to our recent decision in *Executive Director of the Colorado Department of Corrections v. Fetzer*, 2017 CO 77, ¶ 2, 396 P.3d 1108, 1109, where we held that the one-continuous-sentence mandate in section 17-22.5-101, C.R.S. (2021), applies to the calculation of parole eligibility

5

dates.[1] Because the DOC believed that its new calculation rendered Owens's claim moot, and because, regardless, it viewed Owens's motion as falling short of showing a clear right to the extraordinary relief requested, it maintained that Owens could not shoulder his heavy burden under C.R.C.P. 106(a)(2).

¶11 In response, Owens asserted that the 75% rule didn't apply to his aggravated robbery sentences because, in his view, that rule applied only to sentences imposed on inmates who had a previous conviction for a crime of violence, and he had no such previous conviction. Thus, urged Owens, the 50% rule applied to all three of his sentences.

¶12 The district court granted the DOC's motion and dismissed the case. After identifying the arduous burden set forth in C.R.C.P. 106(a)(2), it determined that Owens had failed to establish that he had "a clear right" to have his parole eligibility date calculated by applying the 50% rule to all his sentences.

¶13 Owens appealed, and a division of the court of appeals affirmed. *Owens v. Williams*, 2020 COA 177, ¶ 3, 490 P.3d 1050, 1051. Like the district court, the division concluded that Owens hadn't met his heavy burden of demonstrating that

---

[1] Section 17-22.5-101 provides that "when any inmate has been committed under several convictions with separate sentences, the [DOC] shall construe all sentences as one continuous sentence."

he had a clear right to have the 50% rule applied to all his sentences. *Id.* at ¶ 28, 490 P.3d at 1054. Consequently, held the division, the DOC could apply the 75% rule to determine the parole eligibility for Owens's one continuous sentence, "notwithstanding the fact that Owens is also serving a sentence for an offense that doesn't fall" within the ambit of the 75% calculation rule. *Id.* at ¶ 3, 490 P.3d at 1051. According to the division, "[p]er *Fetzer*, under these circumstances, the DOC had discretion to apply the seventy-five percent rule to the one composite, continuous twenty-four-year sentence." *Id.* at ¶ 22, 490 P.3d at 1053.

¶14 Judge Berger authored a special concurrence. He joined the majority because he felt that its reading of *Fetzer* was "not unreasonable." *Id.* at ¶ 30, 490 P.3d at 1054 (Berger, J., specially concurring). But he wrote separately to explain why a wide grant of discretion to the DOC in this case was neither necessary nor consistent with the statutory scheme. *Id.* at ¶ 31, 490 P.3d at 1054. Although acknowledging that the DOC has discretion in administering this state's prisons, he opined that "when the General Assembly has definitively spoken on a subject and has displaced discretion, courts have a duty to enforce the law as written, not to grant either unlimited or even circumscribed discretion to executive branch officials to rewrite statutes." *Id.* at ¶ 31, 490 P.3d at 1055. Judge Berger then observed that it was feasible "to apply the legislative rules to each of the sentences that comprise the one continuous sentence and remain faithful to the

7

one continuous sentence rule." *Id.* at ¶ 35, 490 P.3d at 1055. This hybrid method of calculation, he said, would honor the legislature's exclusive authority to set the rules for parole eligibility without preventing the DOC from also complying with the one-continuous-sentence statutory requirement. *Id.*

¶15 Apparently believing that *Fetzer* did not allow the division to require the DOC to use the hybrid system of calculation, Judge Berger suggested that our court may wish to "take a second look at this." *Id.* at ¶ 39, 490 P.3d at 1056. After all, added Judge Berger, "the supreme court is not itself bound by *Fetzer*." *Id.* In the alternative, Judge Berger thought that the General Assembly could clarify what it meant when it passed the statutory provisions at play here. *Id.*

¶16 Judge Berger's special concurrence convinced the DOC that the hybrid method is a reasonable means of calculating an inmate's parole eligibility date in a manner that doesn't run afoul of the one-continuous-sentence mandate. Hence, prompted by Judge Berger's concurrence, the DOC recalculated Owens's parole eligibility date using the hybrid method (the original calculation method it had employed).

¶17 Owens nevertheless filed a petition for certiorari in our court. And we agreed to review the following issue:

> Whether, to calculate the parole eligibility date for an inmate serving consecutive sentences, the Department of Corrections must give effect to each parole eligibility statute that governs an inmate's sentences or whether the Department of Corrections may choose, in its discretion,

8

to apply one parole eligibility statute to the entirety of an inmate's one continuous sentence.

¶18 Before our court, Owens maintains that the 50% rule applies to all three of his sentences. In the alternative, he asks us to hold that the DOC is required to employ the hybrid method of calculation to determine his parole eligibility date. The Attorney General counters that the DOC's most recent calculation renders Owens's appeal moot, but even if it doesn't, the division got this one right.

## II. Analysis

¶19 We begin with a brief refresher on the principles implicated in suits for mandamus relief. We then address the Attorney General's contention that the issue before us is moot because the DOC is already giving inmates, including Owens, the benefit of the hybrid method, which was its long-standing means of calculating parole eligibility before *Fetzer*. After explaining why the Attorney General is mistaken, we turn to the calculation of Owens's parole eligibility date. Though we disagree with Owens that he's entitled to have the 50% rule applied to his sentences for aggravated robbery, we agree with him that, given the specific circumstances present, the DOC is required to use the hybrid method of calculation to determine the parole eligibility date for his one continuous sentence.

## A. Suits for Mandamus Relief

¶20 C.R.C.P. 106(a)(2) permits a person to petition the district court for an order

> to compel a . . . governmental body . . . to perform an act which the law specially enjoins as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such . . . governmental body.

¶21 Mandamus is an extraordinary remedy that requires public officials to perform plain legal duties they owe by virtue of their offices. *Bd. of Cnty. Comm'rs v. Cnty. Rd. Users Ass'n*, 11 P.3d 432, 437 (Colo. 2000). While mandamus is available to compel the performance of "a purely ministerial duty involving no discretionary right" and requiring no "exercise of judgment," it is not available to compel the performance of a task that "is discretionary or involves the exercise of judgment." *Id.* An individual seeking mandamus relief bears a demanding burden requiring satisfaction of a three-part test: (1) the individual must have "a clear right" to the relief sought; (2) the party sued must have "a clear duty" to perform the act requested; and (3) there can be no other remedy available. *Id.*

¶22 We inspect Owens's request with these tenets in mind. Before we get to the crux of the matter, however, we take a brief hiatus to dispose of the Attorney General's mootness claim.

## B. The Issue We Confront Is Not Moot

¶23    The Attorney General argues that Owens's challenge to the application of the 75% rule to his one continuous sentence is moot because the DOC has already recalculated his parole eligibility date in accordance with the hybrid system. We are unpersuaded for two reasons.

¶24    First, the dispute between the parties is more nuanced than the Attorney General implies. Owens's position isn't that the DOC, in its discretion, should use the hybrid method to calculate parole eligibility. It's that the DOC has no discretion in this case because, under the specific circumstances present, it is required by law to use the hybrid method of calculation. Were we to dismiss Owens's appeal as moot, the DOC would be free to change its mind yet again and recalculate Owens's parole eligibility date without using the hybrid system. *See Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012) ("The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed.").

¶25    Second, the parties disagree about whether the 75% rule applies to the sentences for the class 3 felony aggravated robbery convictions. The DOC says it does; Owens says it doesn't. There's nothing moot about this issue. And, as we discuss next, resolving it requires us to interpret several statutory provisions.

11

## C. Statutory Provisions Governing Parole Eligibility on Class 3 Felony Aggravated Robbery Sentences

¶26 Owens claims that his aggravated robbery sentences are subject to the 50% rule. And since it is uncontested that he is eligible to be paroled on his vehicular eluding sentence after he serves 50% of it, he asserts that we don't even need to reach the question related to the hybrid method of calculation. As the division ruled, however, Owens misreads section 17-22.5-403, C.R.S. (2021).

¶27 Relevant here, subsection (1) of the statute provides that a person sentenced for a felony that's not a class 1 felony is eligible for parole "after such person has served fifty percent of the sentence imposed."[2] However, under subsection (2.5)(a), "[n]otwithstanding subsection (1) of this section," a person sentenced for certain crimes, including aggravated robbery, committed no earlier than July 1, 2004, "shall be eligible for parole after such person has served seventy-five percent of the sentence imposed." Subsection (2.5)(b) then states that paragraph (a) applies only to:

> (I) A person convicted and sentenced for a crime listed in paragraph (a) of this subsection (2.5) that is a class 2 or class 3 felony offense; or

---

[2] Throughout this opinion, we omit mention of earned time credit (or any other credit) that may be authorized. Consequently, our parole eligibility calculations do not account for authorized credit.

(II) A person convicted and sentenced for a crime listed in paragraph (a) of this subsection (2.5) that is a class 4 or class 5 felony offense, which person has previously been convicted of a crime of violence as defined in section 18-1.3-406, C.R.S.

¶28 Read in its entirety, then, subsection (2.5) plainly requires applying the 75% rule, instead of the 50% rule, to a sentence imposed for a class 2 or 3 felony aggravated robbery or to a sentence imposed for a class 4 or 5 felony when the inmate has previously been convicted of a crime of violence. Owens concedes that he is serving sentences for two class 3 felony aggravated robberies. Therefore, those sentences clearly come within the scope of subsection (2.5)(b)(I) and are subject to the 75% rule.

¶29 Owens contends, however, that since the offenses listed in paragraph (a) are all class 2 or 3 felonies, subparagraphs (I) and (II) in paragraph (b) must be read conjunctively, notwithstanding the disjunctive "or" between them. Otherwise, says Owens, subparagraph (I), which makes the 75% rule applicable to the crimes identified in paragraph (a) that are class 2 or 3 felonies, adds nothing and is robbed of all independent force.

¶30 But Owens cites no authority in support of his position, and we are aware of none. More importantly, reading "or" as "and" in paragraph (b), as he urges, would significantly alter the meaning of the statute. So amended, the statute would require applying the 75% rule to a sentence imposed for one of the crimes listed in paragraph (a) that is a class 2, 3, 4, or 5 felony when the inmate has been

13

previously convicted of a crime of violence. Even assuming inartful drafting by the legislature, we have no authority to rewrite a statute. *DePierre v. United States*, 564 U.S. 70, 82 (2011) ("That we may rue inartful legislative drafting, however, does not excuse us from the responsibility of construing a statute as faithfully as possible to its actual text."). Thus, we are beholden to the clear language of subsection (2.5) and must effectuate it as written. *See In re Marriage of Mack*, 2022 CO 17, ¶ 14, 507 P.3d 524, 528 ("When the statutory language is clear, we must enforce it as written.").

¶31    Because Owens's convictions for aggravated robbery are class 3 felonies, we conclude that the sentences he is serving on those convictions are subject to the 75% rule set forth in subsection (2.5). The fact that he doesn't have a prior conviction for a crime of violence is of no moment to this determination.

## D. Under the Specific Circumstances Present, the DOC Is Required to Use the Hybrid Method to Calculate Owens's Parole Eligibility Date

¶32    Having decided that Owens's sentences for aggravated robbery are subject to the 75% rule in subsection (2.5), and there being no dispute that Owens's sentence for vehicular eluding is subject to the 50% rule in subsection (1), the issue becomes: Which of these two calculation rules applies to Owens's parole eligibility? Or do they both apply? We reiterate that the parties agree, and we

14

concur, that the DOC must treat Owens's three sentences as "one continuous sentence." *See* § 17-22.5-101; *Fetzer*, ¶ 17, 396 P.3d at 1113.

¶33 After recognizing that the DOC had to comply with the one-continuous-sentence statute, the division noted that one of Owens's sentences was governed by the 50% rule while the other two sentences were governed by the 75% rule. *Owens*, ¶¶ 17, 22, 490 P.3d at 1053. But the division concluded that, "[p]er *Fetzer*, . . . the DOC had discretion to apply the seventy-five percent rule to the one composite, continuous twenty-four-year sentence." *Id.* at ¶ 22, 490 P.3d at 1053. In doing so, the division implied that, had the DOC chosen instead to exercise its discretion by applying the 50% rule to Owens's one composite, continuous sentence, that determination, too, would have survived scrutiny. *See id.* But because it couldn't be said that the DOC had "a clear duty" to apply the 50% rule to the one composite, continuous sentence, the division held that Owens could not prevail on his C.R.C.P. 106(a)(2) claim. *Id.* at ¶¶ 22, 28, 490 P.3d at 1053–54. The division erred.

¶34 In deferring to the DOC's mode of calculation, the division felt handcuffed by *Fetzer*. *See id.* at ¶ 27, 490 P.3d at 1054. Even Judge Berger was under the impression that *Fetzer* posed an insuperable barrier for Owens. *Id.* at ¶ 34, 490 P.3d at 1055 (Berger, J., specially concurring). We, however, read *Fetzer* differently.

¶35     There is no question that we recognized in *Fetzer* that the DOC has broad discretion in calculating parole eligibility for inmates:

> As we have indicated in the past, in light of the practicalities inherent in administering the complex of sentencing and parole mandates imposed by statute, the department's administrative interpretations are entitled to great weight. We have in the past held the department's decision to apply some form of governing sentence theory, or some other theory or device altogether, in administering the relevant class of composite continuous sentences to be a matter within its expertise and discretion.

*Fetzer*, ¶ 20, 396 P.3d at 1113. As Judge Berger commented, the discretion vested in the DOC "is necessary to run a large government department, particularly a corrections department."[3] *Owens*, ¶ 31, 490 P.3d at 1054–55.

---

[3] Owens asserts that the DOC deserves no deference at all because it doesn't engage in rulemaking or otherwise act like other agencies. While the DOC does not function like other agencies, legion precedent establishes that it nevertheless has broad discretion in the management of our state's prisons and in the placement, assignment, management, discipline, and classification of inmates housed in those prisons. *See, e.g., Diehl v. Weiser*, 2019 CO 70, ¶ 7, 444 P.3d 313, 316 (recognizing that "we give considerable deference to the DOC's interpretation of the statutory scheme for inmate and parole time computations"); *Reeves v. Colo. Dep't of Corr.*, 155 P.3d 648, 651 (Colo. App. 2007) ("The DOC has broad discretion over the classification and rehabilitation of inmates and the management of prisons."). Such discretion is by legislative design. *See Wisdom Works Counseling Servs., P.C. v. Colo. Dep't of Corr.*, 2015 COA 118, ¶ 36, 360 P.3d 262, 268 (observing that to protect the DOC's discretion, section 17-1-111, C.R.S. (2021), states that "provisions of [the corrections title] relating to the placement, assignment, management, discipline, and classification of inmates shall not be subject" to the statutory provisions setting forth rulemaking procedures for agencies (alteration in original)).

¶36   But in *Fetzer*, immediately after discussing the wide discretion the DOC enjoys in the parole arena, we cautioned that a methodology selected by the DOC would not be upheld if it "contravene[d] a statute or the constitutional rights of an inmate." *Fetzer*, ¶ 20, 396 P.3d at 1114. In support of this proposition, we cited *Price v. Mills*, 728 P.2d 715, 719 (Colo. 1986), a case we had discussed at length earlier in that opinion.

¶37   *Price* involved an action brought by inmates who questioned the methods used by the DOC to calculate certain credits established by the legislature to reduce the actual amount of time convicted felons served in prison. 728 P.2d at 716. The inmates there were affected both by indeterminate sentences with longer incarceration terms under the pre-1979 sentencing scheme and by concurrent determinate sentences under the post-1979 sentencing scheme. *Id.* at 716–18. To comply with the one-continuous-sentence requirement, the DOC had applied a single system of credits to a composite governing sentence, which it had created by considering the sentences together to arrive at a minimum governing sentence and a maximum governing sentence, with the former equaling the inmates' determinate sentence and the latter equaling the inmates' indeterminate sentence. *Id.* at 718.

¶38   Importantly, we recognized in *Fetzer* that we upheld the DOC's solution in *Price* because the DOC's "interpretation of its responsibility to administer" the

different statutes in question "was reasonable and contravened no legislative or constitutional rights or policies." *Fetzer*, ¶ 14, 396 P.3d at 1112. We said that, "[u]nder such circumstances," we were comfortable declaring that the DOC's "'administrative interpretation of the statutes [was] entitled to great weight.'" *Id.* (quoting *Price*, 728 P.2d at 719). Emphasizing this message one more time, we went on to observe that two years after *Price*, we "reaffirmed our willingness to defer to the [DOC's] administrative interpretation . . . as long as that interpretation was 'reasonable and contravene[d] no legislative or constitutional rights or policies.'" *Id.* (second alteration in original) (quoting *People v. Broga*, 750 P.2d 59, 63 (Colo. 1988)).

¶39 And in *Fetzer* itself, we disavowed the DOC's "governing sentence" method, which calculated Fetzer's parole eligibility date solely on the basis of the longest of his concurrent sentences, stressing that the DOC could not contravene the one-continuous-sentence statutory requirement:

> While the [DOC's] interpretation of its responsibilities to administer relevant statutory mandates is entitled to great weight, in this case the [DOC] offers no interpretation of the continuous sentence requirement consistent with the governing sentence method it uses to calculate Fetzer's parole eligibility. Quite the contrary, the [DOC] makes clear that it considers its governing sentence method . . . to be an exception to the statutory requirement, mandated by the prior decisions of this court. As we have explained, the [DOC] errs in construing the precedents of this court as having sanctioned its current governing sentence method at all, much less as having directed that it be applied in lieu of the continuous sentence requirement of section 17-22.5-101.

18

*Fetzer*, ¶ 17, 396 P.3d at 1113. Because the DOC had failed to adhere to a legislative enactment, we ultimately affirmed the judgment of the court of appeals reversing the district court's dismissal of Fetzer's C.R.C.P. 106(a)(2) claim. *Id.* at ¶ 21, 396 P.3d at 1114.

¶40 Accordingly, as pertinent here, we broke no new ground in *Fetzer*. Concordant with our longstanding jurisprudence, we merely reasoned that, notwithstanding the deference we generally afford the DOC's interpretation of its statutory responsibilities, the DOC could not violate a legislative enactment. *Id.* at ¶ 20, 396 P.3d at 1113–14. Because the parole eligibility calculation method selected by the DOC contravened the one-continuous-sentence statute, we declined to uphold it. *Id.*

¶41 Here, the method of calculation approved by the division contravened both subsections (1) and (2.5). Subsection (1) requires applying the 50% rule to Owens's sentence for vehicular eluding. And subsection (2.5) prohibits applying the 75% rule to that sentence. Hence, by applying the 75% rule to Owens's vehicular eluding sentence, the division violated both statutory provisions. It follows that, notwithstanding the DOC's wide discretion, the division mistakenly approved the calculation of Owens's parole eligibility date based solely on the 75% rule.

¶42 We note that the parties spar over our recent statement in *Diehl v. Weiser*, 2019 CO 70, ¶ 24, 444 P.3d 313, 319, that when there is not "absolute statutory

clarity, we will defer to the DOC's interpretation unless it is unreasonable." In our view, this is much ado about nothing in the case before us. First, even assuming the statutory provisions we confront lack absolute clarity, we have already determined that the method of calculation accepted by the division violated subsections (1) and (2.5). Thus, that calculation method cannot be deemed reasonable. Second, Owens failed to preserve this issue, as he raises it for the first time now. And third, the Attorney General does little more than summarily assert that the statutory provisions in question lack absolute clarity, and we are unwilling to assume that such is the case simply because it is not easy to effectuate them simultaneously.[4]

¶43    That there is some difficulty in applying subsection (1) to the eluding sentence and subsection (2.5) to the aggravated robbery sentences, while at the same time adhering to the one-continuous-sentence statutory requirement, doesn't mean that the statutory provisions under inspection are ambiguous. They

---

[4] Owens asks us to consider backing away from the quoted statement in *Diehl* and to provide further guidance on the level of deference owed to the DOC's interpretation of a statutory provision, including one that's ambiguous. But that's a bridge we don't have to cross today. In this case, it suffices to hold that, no matter what level of deference the DOC deserves, its method of calculating parole eligibility cannot contravene a statutory provision.

aren't. Actually, each one is clear as day. And we agree with Judge Berger that the hybrid method allows us to enforce all of them.

¶44 Therefore, we now hold that, under the circumstances of this case, the DOC is required to calculate the parole eligibility date for Owens's one continuous sentence by employing a hybrid system that effectuates both of the calculation rules.[5] Consequently, the DOC must apply the 50% rule to the vehicular eluding sentence and the 75% rule to the two aggravated robbery sentences. After doing so, the DOC must combine the resulting calculations to determine the parole eligibility date for Owens's single continuous sentence. This system at once honors the two different calculation rules and the one-continuous-sentence requirement.

¶45 Doing the math under the hybrid method of calculation: 75% of the two consecutive sentences for aggravated robbery comes out to 15 years (75% of 10 years = 7.5 years, and 7.5 years + 7.5 years = 15 years); 50% of the sentence for vehicular eluding comes out to 2 years (50% of 4 years = 2 years); and combining

_____

[5] We underscore that our holding requiring the hybrid method of calculation is limited to the circumstances before us: consecutive sentences, at least one of which is subject to one calculation rule and at least one of which is subject to a different calculation rule. The DOC, in its discretion, may be able to use a different method of calculation in other circumstances, so long as that method doesn't violate any legislative or constitutional rights or policies.

those calculations comes out to 17 years (15 years + 2 years = 17 years). So, Owens should be eligible for parole after serving 17 years of his one continuous sentence.

¶46 Our 17-year parole eligibility calculation matches the DOC's most recent calculation. It's also the calculation for which Owens alternatively advocates. Therefore, no other action is required.

## III. Conclusion

¶47 Because the division erred in approving a method of calculating parole eligibility that contravened two statutory provisions, we reverse. While the DOC is vested with broad discretion in determining parole eligibility, that discretion isn't unbounded; the DOC may not contravene a legislative enactment. Under the specific circumstances of this case, the DOC must employ the hybrid method to calculate Owens's parole eligibility date in order to effectuate all of the pertinent statutory provisions. Since the DOC has already recalculated Owens's parole eligibility date using the hybrid system, we remand with instructions to simply return the case to the district court.